RODOLPH G. BESSETTE *vs.* COMMISSIONER OF PUBLIC
WORKS.

Suffolk.    January 4, 1965. — March 2, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Commonwealth,* Officers and employees. *Public Officer. Civil Service.*
*Constitutional Law,* Bill of attainder. *Statute,* Retroactive statute.

The provision of G. L. c. 30, § 59, inserted by St. 1962, c. 798, § 1, that
"the appointing authority of any department of the commonwealth . . .
in which a person is employed may suspend such person during any
period during which said person is under indictment for misconduct in
his . . . employment," is not limited in application to persons to whom
the civil service procedures of G. L. c. 31 do not apply, and an employee
of the Commonwealth subject to c. 31 might properly be suspended
under c. 30, § 59, without compliance by the appointing authority with
the provisions of § 43 (a) of c. 31.    [608]
The appointing authority of a department of the Commonwealth was em-
powered to suspend one of its employees under G. L. c. 30, § 59, in-
serted by St. 1962, c. 798, § 1, during a period in which he was under
indictments for misconduct in his employment even though the indict-
ments antedated the effective date of that statute; § 2 of c. 798, delaying
the effective date of c. 798 beyond the normal ninety day effective date
of a statute, did not indicate a legislative intent that the statute should
not apply to indictments antedating it.    [608–609]
St. 1963, c. 821, reorganizing the Department of Public Works under a
new Public Works Commission appointed by the Governor, transferring
to the new department without the impairment of rights all officers,
deputies and employees of the former department holding positions
subject to G. L. c. 31 or c. 30, § 9A, except the Director of the Division
of Waterways, abolishing that office and placing waterway affairs in
charge of a Commissioner, was within the legislative power and was
not discriminatory nor unconstitutional as a bill of attainder with re-
spect to the Director.    [609–610]

PETITION for a writ of mandamus filed in the Supreme
Judicial Court for the county of Suffolk on December 19,
1963.

Upon transfer to the Superior Court the case was heard by *Spring, J.*

*George L. Rabb* for the petitioner.

*Frederic E. Greenman,* Assistant Attorney General (*John F. St. Cyr,* Legal Assistant to the Attorney General, with him), for the respondent.

WHITTEMORE, J.   This is an appeal from an order in the Superior Court dismissing a petition for a writ of mandamus.   The case was submitted on a statement of agreed facts.

The Commissioner of the Department of Public Works, on June 27, 1963, suspended the petitioner from the position of Director of the Division of Waterways, pending the outcome of his "appeal before the Supreme Judicial Court . . . and indictments still pending before the Suffolk Superior Court."

The Commissioner acted under G. L. c. 30, § 59.   The statute authorizes suspension during any period during which ". . . [the suspended] person is under indictment for misconduct in his office or employment of the commonwealth."[1]

---

[1] G. L. c. 30, § 59, inserted by St. 1962, c. 798: "The appointing authority of any department of the commonwealth, or of any board, commission or agency thereof, in which a person is employed may suspend such person during any period during which said person is under indictment for misconduct in his office or employment of the commonwealth.   Notice of said suspension shall be given in writing in hand to said person, and the receipt thereof shall automatically suspend the authority of said person until he is notified, in like manner, that his suspension is removed.

"Any person so suspended shall not receive any compensation or salary during the period of such suspension, nor shall the period of his suspension be counted in computing his sick leave or vacation benefits or seniority rights, nor shall any person who retires from service while under such suspension be entitled to any pension or retirement benefits, notwithstanding any contrary provisions of law, but all contributions paid by him into a retirement fund, if any, shall be returned to him.

"A suspension under this section shall not, in any way, be used to prejudice the rights of the suspended person either civilly or criminally.   During the period of any such suspension, the appointing authority may fill the position of the suspended employee on a temporary basis.

"If the criminal proceedings against the person suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension, and the time of his suspension shall count in determining sick leave, vacation, seniority and other rights, and shall be counted as creditable service for purposes of retirement."

The appeal referred to in the notice was from the petitioner's conviction of conspiracy in the Superior Court for Suffolk County on June 20, 1963, under an indictment dated November 29, 1961. The reference to "indictments still pending" was to an indictment for perjury also dated November 29, 1961. See *Commonwealth* v. *Bessette,* 345 Mass. 358.

The conspiracy alleged was an agreement for the unlawful assignment of work under contracts between the Commonwealth and others without the previous written consent of the Department of Public Works. The perjury alleged was that, in a proceeding before the Commissioner of the Department of Public Works under G. L. c. 31, § 43, the petitioner falsely testified that he had no knowledge of the circumvention of an article of the standard specifications of the Division of Waterways.

The office of the Director of the Division of Waterways was abolished by § 2[2] of St. 1963, c. 821, effective November 15, 1963. The statute struck G. L. c. 16 and substituted a new c. 16. The then existing commission was abolished and a new Public Works Commission was established. Section 6 of c. 821, with one exception, transferred to the new Department of Public Works (under the new Commission) all officers, deputies and employees of any administrative unit of the former department who had permanent appointment under G. L. c. 31 or tenure by reason of G. L. c. 30, § 9A, without impairment of civil service status, seniority, retirement, or other rights. The exception was the Director of the Division of Waterways.

The petitioner sought an order to require the Commissioner of Public Works to restore him to employment with rights commensurate to those given other employees of the former department and for the payment of compensation

[2] "The commission of public works, consisting of the commissioner of public works and two associate commissioners, in existence on the effective date of this act, and the office of director of the division of waterways as so existing, are hereby abolished, and their respective powers and duties are hereby transferred to the public works commission, and the chairman of said commission, established by section one of chapter sixteen of the General Laws, as appearing in section one of this act."

from the date of suspension. The judge in the Superior Court ruled that the petitioner's position had been abolished and he had been deprived of no constitutional rights. Although the Commissioner has argued the merits of the case, he also suggests that the writ was properly denied as a matter of discretion and because the issue is moot. The principles to dispose of this case on substantive grounds are well established and we prefer to rest our decision thereon.

1. General Laws c. 30, § 59, inserted by St. 1962, c. 798, was applicable to permit the suspension of the petitioner without compliance with the provisions of G. L. c. 31, § 43 (a). There is nothing in either c. 31, § 43, or c. 30, § 59, to support the contention that the latter statute applies only to persons to whom the civil service procedures of c. 31 do not apply.

Section 59 of c. 30 contains no exception. ("The appointing authority of any department . . . in which a person is employed may suspend such person . . ..")

The purpose of the act, as shown by its terms, calls for its general application. The Commonwealth is equally disserved by the continued functioning of any employee while under indictment for "misconduct in his office or employment," whether he has or has not tenure. The statute fully protects the suspended employee upon his vindication, whatever his status, assuring him "all compensation . . . for the period of his suspension" and that such period shall count in determining all his fringe benefits.

If an exception of employees subject to c. 31 was intended, an expression of that intent in the later statute was needed to rebut the implication of that statute. The reasonably apparent premise of c. 30, § 59, is that administrative hearings and a review in the District Court are wholly unnecessary for suspension because of indictment. It is the ascertainable and indisputable fact of the indictment, quite apart from guilt, that makes continuance in office unsuitable. Chapter 30, § 59, is dominant in its purpose and its terms.

That the indictments antedated the statute is inconsequential. The statute is concerned with the administration

of government. No right of the petitioner was infringed. *Welch* v. *Mayor of Taunton,* 343 Mass. 485, 487, and cases cited. There is nothing in the suggestion that the statute is punitive so that retroactive application is barred. The purpose of the statute is to protect the public interest. No argument is needed to show that it is appropriate, and in the public interest, that an official indicted for malfeasance in office should be separated from the office pending trial and, if convicted, should have no right of reinstatement. The effect on the petitioner is incidental to the public purpose.

"The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession." *De Veau* v. *Braisted,* 363 U. S. 144, 160. *Welch* v. *Mayor of Taunton,* 343 Mass. 485. See *Faxon* v. *School Comm. of Boston,* 331 Mass. 531, 538; *Sheridan* v. *Gardner,* 347 Mass. 8, 14–15.

The petitioner relies on § 2 of St. 1962, c. 798, which provides that the act take effect January 1, 1963. As the statute was approved July 27, 1962, it is suggested that the Legislature by § 2 showed an intent against application of the act to prior indictments. The only plain intent, however, is that the power to suspend for indictment arise and be operative on January 1, 1963, and not before. It is speculative whether the Legislature had the further intent suggested, and the implication, if present, is insufficient to overcome the holdings applicable to such a newly established rule of administration.

2. The petitioner contends that, as to him, the reorganization of the Department of Public Works by St. 1963, c. 821, was discriminatory and, in effect, a bill of attainder. We disagree. The abolition of the position was within the legislative power. *Reynolds* v. *McDermott,* 264 Mass. 158, 165. *McNeil* v. *Mayor & City Council of Peabody,* 297

Mass. 499, 503–504. *Williams* v. *New Bedford,* 303 Mass. 213. *Cullen* v. *Mayor of Newton,* 308 Mass. 578, 580. See *Simonian* v. *Boston Redevelopment Authy.* 342 Mass. 573, 581. There is no basis for concluding that the change was made for any reason other than the public interest. That the petitioner is the only person other than the commissioners whose position was abolished shows no invasion of a constitutional right.

Prior to reorganization the concerns of the department in respect of waterways had special statutory treatment. They were placed in a separate division under a director. Under the reorganization, by contrast, a Commissioner was placed in charge of such affairs. Section 1 of c. 16, inserted by St. 1963, c. 821, § 1, gave the Governor the power of appointment of commissioners. The Legislature could not, without negating that power, have provided for the transfer of the petitioner to a position in charge of waterways.

The abolition of the office necessarily entailed the ending of the civil service and retirement rights inherent in the office. These rights were not personal to the petitioner. The petitioner's rights to repayment of retirement system contributions under G. L. c. 32, § 11, are not taken away. See c. 30, § 59.

*Order dismissing petition affirmed.*