7 Mass. App. Ct. 409 (1979)
388 N.E.2d 304
EDWARD J. POWER
vs.
SECRETARY OF THE DEPARTMENT OF COMMUNITY AFFAIRS.
Appeals Court of Massachusetts, Suffolk.
March 12, 1979.
April 18, 1979.
Present: ARMSTRONG, BROWN, & GREANEY, JJ.
Mitchell J. Sikora, Jr., Assistant Attorney General, for the defendant.
Dace J. Moore for the plaintiff.
GREANEY, J.
In 1968, by way of legislative reorganization, the Department of Commerce and Development (DCD) and several other State agencies were metamorphosed into the Department of Community Affairs (DCA). The plaintiff, Edward J. Power, who was at the time of the reorganization the director of the bureau of property management services in the DCD, was subsequently assigned in the DCA a new job title and different duties as a tenant advisory technician. Power maintains that his position as a bureau director in the DCD had not been abolished by the reorganization and, as a result, that *410 the change in his job title and duties constituted a de facto demotion in contravention of the protections due to him under civil service law. The Secretary contends that Power's old position had been abolished by the legislative reorganization of the department and that Power's reclassification was proper in all respects. The dispute was submitted by way of a complaint under G.L.c. 231A for declaratory relief to a District Court Judge sitting in the Superior Court under statutory authority, who determined that Power's job had not been abolished and, as a result, that Power could not be assigned different duties under a new job title in the DCA.
We briefly summarize the principal facts from the statement of agreed facts submitted to the judge under Mass.R.Civ.P. 64, 365 Mass. 831 (1974). On November 25, 1964, Power, a veteran, was appointed to the position of director, bureau of property management services, in the division of housing of the DCD by the then commissioner.[1] On July 25, 1968, the Legislature reorganized the DCD and other agencies, creating the DCA and assigning to it functions formerly performed by divisions of the DCD, including the division of housing. See St. 1968, c. 761, inserting G.L.c. 23B and amending G.L.c. 23A. After the reorganization, Power was transferred to the DCA, without impairment of status or employment rights, where he continued to serve with the same job title and to perform substantially the same duties until February 18, 1971, when he was notified by a deputy commissioner of the DCA that his job classification had been changed to that of a tenant advisory technician. Both before and after the assignment of the new job title and duties, Power has retained the same grade classification *411 he held at the DCD, has followed the natural progression of step increases, has attained the maximum salary level within his grade, and has not suffered a diminution in salary. Since 1971 the name of the bureau handling property management services and the head of that bureau have changed several times; in addition, the bureau has increased from seven to thirty-five employees.[2] In 1976 the current head of the bureau was appointed at a grade in excess of that then held by Power, and the duties performed by the bureau head were revised to include some of the functions previously handled by Power. It was the 1971 job reclassification that caused Power to contend, and the judge ultimately to rule, that Power's position had not been abolished by the 1968 reorganization act. We hold that this ruling was in error, that Power's position in the DCD was abolished by the legislation that accomplished the 1968 reorganization, and that Power was subject to the assignment of a new job title and new duties so long as he did not incur a loss in salary or other job related benefits. As a result, we reverse the judgment and direct the entry of a new declaration as to Power's status within the department.
We proceed directly to the issue that is dispositive of this appeal  the impact of the 1968 reorganization act on the position Power held at the time the act was passed.
By virtue of St. 1968, c. 761, entitled "An Act establishing a department of community affairs," the Legislature comprehensively reorganized the existing DCD in which *412 Power held a position of a bureau director. In our view, the reorganization abolished the position that Power had held in the DCD, leaving him available for reassignment to a new position. This conclusion is made apparent by reading G.L.c. 23B, § 10, inserted by St. 1968, c. 761, § 1, along with St. 1968, c. 761, §§ 3, 12, 13, and 14. We now review these sections in detail.
General Laws c. 23B, § 10 (inserted by St. 1968, c. 761, § 1), provided that the designation "division of housing," as used in St. 1964, c. 636, should mean "the department of community affairs established by this chapter." In like manner, G.L.c. 23B, § 10, provided that references to the "bureau of property management services" should mean "the department of community affairs" and that any words referring to "the administrative head" of agencies previously mentioned, including the director of the bureau of property management services, should mean "the commissioner of community affairs or such officer or employee of the department of community affairs as the commissioner from time to time may designate." Statute 1968, c. 761, § 3, directs its attention to the first sentence of G.L.c. 23A, § 3, inserted by St. 1964, c. 636, § 1, and strikes from it the word "housing"; § 1 of c. 636 had created the division of which Power's bureau in the DCD was an administrative unit. Chapter 761, § 12, then transfers all of the functions performed by the division of housing and Power's bureau to the DCA in the following language: "All powers and duties, as existing immediately prior to the effective date of this act, of the division of housing ... and of any administrative unit within said ... [division] are hereby transferred to, and shall be exercised and performed by, the [DCA]" (emphasis supplied). With explicit detail, St. 1968, c. 761, § 13, then proceeds to eliminate Power's bureau by stating that "[t]he division of housing ... and any administrative unit within such [division] ... as existing in the [DCD] ... prior to the effective date of this act ... are hereby abolished" (emphasis supplied). Finally, St. 1968, c. 761, § 14, transfers *413 the employees in the DCD to the new agency and expressly defines their status in the following terms: ``All officers and employees of any division, bureau ... or any other administrative unit abolished by section thirteen of this act who immediately prior to the effective date of this act hold permanent appointment in positions classified under [the civil service law] or have tenure in their positions by reason of section nine A of chapter thirty of the General Laws are hereby transferred to the [DCA] ... every such transfer to be without impairment of civil service status, seniority, retirement and other rights of the employee, without interruption of service ... and without reduction in his compensation and salary grade, notwithstanding any change in his title or duties made as a result of such transfer, subject, however, to the provisions of [the civil service law], and the rules and regulations established thereunder" (emphasis supplied).[3]
Our obligation is to read and apply the reorganization statute, St. 1968, c. 761, in a way which yields an effectual and harmonious piece of legislation compatible with the legislative goals that motivated its passage. Mathewson v. Contributory Retirement Appeal Bd., 335 Mass. 610, 614-615 (1957). Medeiros v. Election Commrs. of Fall River, 367 Mass. 286, 292 (1975). See also Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527 (1947). The legislative purpose regarding what was to occur to Power's bureau of property management services within the old DCD and to Power's position as its *414 director, based on the sections of c. 761 set forth above, is unequivocally clear. Those purposes were: (1) to abolish all of the administrative units within the DCD, including the bureau of property management services; (2) to transfer the functions of the administrative units that had been eliminated to the DCA; and (3) to carry over to the new department the employees whose old positions had been eliminated, preserving for them alternate employment and all their economic and job related benefits, but authorizing a change in their titles and duties as the necessities and goals of the new agency should require. The net result of all of this legislative change was to abolish Power's old position and render him subject at some future time to a job reassignment by the Commissioner or his deputy.[4]
Power focuses on the reference to the civil service law (G.L.c. 31) which appears in St. 1968, c. 761, § 14, quoted above, as according him the rights to notice, a hearing before the Civil Service Commission, and the right to court review of any adverse commission decision before he can be assigned a new title and duties in the DCA. But even if, by virtue of G.L.c. 30, § 9A, Power is under the protective mantle of the civil service laws contained in G.L.c. 31, a question we need not decide,[5] the particular *415 language relied upon by Power in § 14 would not apply to him in any event. That reference applies to transferred employees who have been assigned new positions and different duties and who find, after their reassignment, that their civil service status has been changed, their compensation decreased, or their job related benefits such as seniority or retirement impaired in some way. None of these contingencies occurred to Power as a result of his reassignment.
We also are left unpersuaded by Power's argument that since he maintained his former title from the effective date of the reorganization in 1968 until February 18, 1971, and during that period was paid in a line budget item under his designation as a director, that he has been locked into his former position in the new department. These circumstances would not act to defeat a manifest legislative intent to abolish the position. Power's method and manner of payment was more a matter of administrative convenience than anything else, and not a circumstance that could disrupt a clearly expressed legislative policy judgment.
We also reach the conclusions just expressed with regard to the statutory reorganization scheme in light of the well settled principles that an office created by the *416 Legislature (as was Power's) "may be regulated, limited, enlarged or terminated [by the Legislature], as public exigency or policy may require." Taft v. Adams, 3 Gray 126, 130 (1855). Accord, Butler v. Pennsylvania, 51 U.S. (10 How.) 402, 416 (1850); Barnes v. Mayor of Chicopee, 213 Mass. 1, 4 (1912); Attorney Gen. v. Tufts, 239 Mass. 458, 480 (1921); Williams v. New Bedford, 303 Mass. 213, 214-215 (1939); McCarthy v. Sheriff of Suffolk County, 366 Mass. 779, 782 (1975). See Nichols v. Commissioner of Pub. Welfare, 311 Mass. 125, 130 (1942); Commissioner of Admn. v. Kelley, 351 Mass. 686, 691 (1967). See also Kingston v. McLaughlin, 359 F. Supp. 25 (D. Mass. 1972), aff'd, 411 U.S. 923 (1973). The Legislature has the unquestioned power not only to alter the methods for appointment and removal of State officers but also to change their duties or tenure. Collins v. Selectmen of Brookline, 325 Mass. 562, 565 (1950). Donaghy v. Macy, 167 Mass. 178 (1896).
The Legislature exercised precisely this reserved power in creating the DCA and abolishing the DCD and its component administrative units. Chapter 761 is perfectly lucid in both meaning and purpose. It is a statute which provides for the need of flexible development of the DCA by reassignment of personnel transferred to it with the preservation of their economic rights and job privileges. Both the melody and the words of c. 761 indisputably point to the conclusion that Power has not been unlawfully demoted but rather reassigned, after the abolition of his former position, to a new position without impairment of his economic rights and job benefits.[6]
*417 The judgment is reversed, and a new judgment is to be entered declaring that Power's former position in the DCD as director of the bureau of property management services was abolished, and, as a result, that he is properly assigned the position of a tenant advisory technician with different duties in the DCA so long as his compensation and other job related benefits remain unimpaired.
So ordered.
NOTES
[1] Power's appointment was made under the provisions of G.L.c. 23A, inserted by St. 1964, c. 636, which reorganized the Department of Commerce and certain other State agencies combining them into the DCD. General Laws c. 23A, § 3, created a division of housing within the new department, while G.L.c. 23A, § 4, provided within that division a bureau of property management services.
[2] General Laws c. 23B, § 4, inserted by St. 1968, c. 761, § 1, provided that "[t]he commissioner may from time to time, with approval of the governor, establish ... such bureaus as shall be necessary ... and ... he may, with the approval of the governor, abolish any such bureau ...;" G.L.c. 23B, § 4, as appearing in St. 1975, c. 163, § 2, provides that "[t]here shall be established within the department such bureaus as the secretary [who replaced the commissioner under St. 1975, c. 163, § 1, as head of the DCA] shall from time to time deem necessary. All such bureaus shall be under the direction, control and supervision of the secretary, who may abolish or merge any such bureaus as he may deem advisable."
[3] General Laws c. 23B, §§ 1 and 2, inserted by St. 1968, c. 761, § 1, provided for certain specified new divisions within the DCA and conferred upon the Commissioner, his deputies and subordinate officers the power to direct, control, and supervise the department, all component units within it, and the employees attached to those administrative units. General Laws c. 23B, § 4, inserted by St. 1968, c. 761, § 1, empowered the Commissioner to establish bureaus "and such sections and other administrative units within such bureaus as he may deem advisable," to abolish or merge bureaus or administrative units "as he may deem advisable," and to appoint directors to head any bureaus thereby established.
[4] Power's view of the effect of c. 761 is one we cannot accept. He reads § 12's transfer of the powers and duties of the division of housing to the DCA as the transplantation of the bureau of property management services intact into the new agency. He takes § 13 as then abolishing what is left of the division of housing. The obvious defect in this construction is that § 12, in transposing the powers and duties held by the old agency to the new, did not transfer the particular administrative units with their particular designated employees and job titles (see discussion concerning G.L.c. 23B, § 10, supra). Section 14 takes care of the transfer of employees, but only after their old administrative units are abolished. To read c. 761 Power's way would make the reorganization in large part a nullity.
[5] It is argued by Power that since he was a veteran he acquired civil service protection within the provisions of the so called Veteran's Tenure Statute contained in G.L.c. 30, § 9A, after he served three years as a bureau director in the DCD. That statute as it appears in St. 1947, c. 242, provides that a veteran who holds an office or position for not less than three years shall not be involuntarily separated from his office or position except subject to, and in accordance with, the civil service law (G.L.c. 31) to the same extent as if the office or position were classified under c. 31. The parties have spent a great deal of effort arguing whether Power is entitled to civil service protection and what effect c. 30, § 9A, has on his status and the events that occurred here. We need not reach all these issues since the reorganization act makes it clear that a person under civil service whose former position is abolished will continue to maintain civil service status and his economic and other job related benefits subject to the assignment of a new position and new duties. No effort was made here to affect Power's civil service status in any way, or to alter his compensation and job related benefits. Thus the principal questions are the ones discussed  whether Power's job was in fact abolished, and if so, whether he could be assigned a different title and duties in the new department.
[6] Compare McGrath v. Massachusetts Port Authy., 350 Mass. 762 (1966), a case strikingly similar to the one before us. The plaintiff in that case directed a State agency which was legislatively abolished, and he was assigned a new title and duties in the successor agency. Arguments comparable to those made by Power were rejected by the Supreme Judicial Court. While McGrath's position was abolished by name, the same result was accomplished here by the provisions of the reorganization act taken as a whole.