## Wilbur Brittle *vs.* City of Boston.

No. 99-P-893.

Suffolk. February 14, 2001. - May 24, 2002.

Present: Armstrong, C.J., Lenk, & Kantrowitz, JJ.

Further appellate review granted, 437 Mass. 1107 (2002).

*Police Officer. Public Employment,* Police. *Police,* Suspension, Compensation.

Under G. L. c. 268A, § 25, a police officer who had been suspended due to a
pending indictment charging that he had stalked and threatened his former
girlfriend was entitled to the pay that had been withheld during the time he
was under suspension, despite his having pleaded guilty to additional
Federal drug charges that had been brought while he was suspended,
where the stalking and threatening charges that were the basis for the
suspension were dismissed without a finding or verdict of guilty; moreover,
this court determined that the officer was entitled to back pay from the date
he was placed on suspension to the date that the Federal indictments were
returned, where the officer did not argue for a longer period. [821-825]
Kantrowitz, J., dissenting.

Civil action commenced in the Superior Court Department on
April 8, 1998.

The case was heard by *Margaret R. Hinkle,* J., on a motion
for summary judgment.

*Edward J. McCormick, III,* for the plaintiff.

*William V. Hoch,* Special Assistant Corporation Counsel, for
the defendant.

Armstrong, C.J. In July, 1994, police Sergeant Wilbur Brittle
was suspended without pay from the Boston police department
due to a pending indictment charging that he had stalked (G. L.
c. 265, § 43[a]) and threatened (G. L. c. 275, § 2) a former
girlfriend, Laverne Cotton. As a result of the decision the fol-
lowing month in *Commonwealth* v. *Kwiatkowski,* 418 Mass.
543, 546-547 (1994), holding the stalking statute as theretofore
applied unconstitutionally vague, the Commonwealth dismissed
the stalking count of the indictment. The threats count remained

pending until November 19, 1996, when the district attorney's office filed a nolle prosequi. In the meantime, however, on June 13, 1996, a Federal grand jury had returned indictments charging Brittle with several drug offenses, including conspiring with Cotton and others to import and distribute heroin. The Federal charges were resolved by guilty pleas filed on November 5, 1997, and Brittle was sentenced to ten years' imprisonment. He resigned from the police force the same day. Brittle thereafter demanded his withheld pay for the period he was under suspension,[1] and he brings the present appeal from a decision on a motion for summary judgment, ruling that he is not entitled to repayment.

The governing statute is G. L. c. 268A, § 25, which provides for the suspension of municipal officers or employees who are under indictment for misconduct while in office. Like a sister statute, G. L. c. 30, § 59, providing for the suspension of State employees while under indictment, the employee under suspension "shall not receive any compensation . . . during the period of such suspension . . . [but i]f the criminal proceedings . . . are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall forthwith be removed, and he shall receive all compensation or salary due him for the period of his suspension." *Madden* v. *Secretary of Pub. Safety,* 412 Mass. 1010, 1010-1011 (1992), quoting from G. L. c. 30, § 59.

In the *Madden* case, a Capitol police officer was suspended under § 59 on State indictments charging larceny, conspiracy, and receiving stolen goods. *Id.* at 1010. Those charges were dropped on the entry of a nolle prosequi, but the Secretary of Public Safety refused to remove the suspension because the officer was thereafter indicted on Federal charges of conspiracy to distribute cocaine, possession of cocaine with intent to distribute, and conspiracy to commit mail fraud. Madden ultimately pleaded guilty to the mail fraud charge. *Id.* at 1011.

On those facts, the court held that Madden was entitled to his back pay for the period of his suspension, up to the point at

---

[1]Brittle submitted his resignation to the Boston police department on the same day he pleaded guilty and was sentenced. He demanded his back pay in December, 1997.

which the secretary refused to remove the suspension due to the Federal charges (which the court treated as the start of a second suspension):

> "The language of G. L. c. 30, § 59, is unambiguous. The statute provides for payment of back compensation and benefits if none of the 'charges on which [the employee] was indicted' results in a finding or verdict of guilty. G. L. c. 30, § 59. The phrase 'charges on which he was indicted' clearly refers to the charges found in the indictments that gave rise to the suspension. In the present case, the charges that gave rise to the suspension in question were those brought by the Commonwealth. As these charges did not result in a finding or verdict of guilty, the plaintiff is entitled to back pay for the period of the suspension." *Ibid.*

We are bound similarly to apply the identical language of G. L. c. 268A, § 25, to the present case, because the charges on which Brittle was suspended, stalking and threats, were dismissed without a finding or verdict of guilt.[2]

None of the points of difference argued by the Commonwealth seems sufficient to support a different result. It is true that the Federal indictments in this case were returned prior to the entry of the nolle prosequi on the last of the State charges (that for threats), whereas in *Madden*, there was a period of several weeks between entry of the nolle prosequi of the State indictments and the return of the Federal indictments. *Madden*, 412 Mass. at 1011. Thus Brittle, unlike Madden, was continuously under indictment until the time of his conviction. But the rationale of *Madden* makes the difference immaterial. Madden was entitled to back pay not because there existed a temporal "gap" between the State and Federal charges, but because the

---

[2]It is true, as the dissent points out, that the decision in *Bessette* v. *Commissioner of Pub. Works*, 348 Mass. 605, 608 (1965), characterized the statute as "protect[ing] the suspended employee upon his vindication," but nothing in *Bessette* suggests that "vindication" envisioned something more than the statutorily specified "terminat[ion] without a finding or verdict of guilty on any of the charges on which he was indicted." It is unpalatable to restore back pay to a police officer convicted of drug dealing, but our role as a court is to enforce the terms of the statute as it is written, not as we with the benefit of hindsight would add to its terms.

charges that formed the basis of his suspension did not result in a finding or verdict of guilt. *Ibid.* Brittle could not have been suspended under § 25 on the basis of Federal indictments until at least June, 1996, when those indictments were returned. Reading § 25 to deny Brittle his back pay because he was found guilty under indictments that could not have formed the basis of his July, 1994, suspension would abrogate *Madden*'s central holding.

Second, the Commonwealth argues that *Madden* should not apply because the State charges against Brittle that were dismissed were factually related to the Federal charges on which he was convicted. That is to say, the complainant in the State charges, Laverne Cotton, was an unindicted coconspirator in the heroin smuggling and distribution operation that was the subject of the Federal charges, and it was a dispute over Brittle's claim for a share of the proceeds that underlay the acts of threatening and stalking alleged in the State indictments. That said, nothing of relevance follows. The State and Federal charges were legally distinct; the only sense in which they overlapped was that for a brief period both sets of charges were pending. Offenses are not related merely because they were committed by the same defendant, even on the same day. *Commonwealth* v. *Green*, 52 Mass. App. Ct. 98, 102 (2001).[3] Although the assistant district attorney in entering the nolle prosequi asserted that the State and Federal charges were "directly related" and that Laverne Cotton could be called to give testimony in both, no reason was suggested why the pending State threats charge constituted an impediment to prosecution of the Federal charges. In any event,

---

[3]One can imagine cases involving dual prosecutions, wherein the State and Federal prosecutions are for the same conduct or course of conduct that violates the laws of both sovereignties, as in, for example, *Commonwealth* v. *Cepulonis*, 374 Mass. 487, 490 (1978). If we assume, without so deciding, that in such a case, the Federal prosecution could be treated as identical to the State prosecution for purposes of § 25, perhaps by analogy to a grand jury indictment that supercedes a District Court criminal complaint for the same conduct, then in such a case we could conclude that the letter of suspension should be treated as extending equally to the later brought but essentially identical Federal charges, with the result that the Federal conviction would justify not returning pay for the whole period of the suspension, regardless what became of the original State charges. In the present case, however, there is no such identity of State and Federal indictments.

whatever the reason for the dismissals, the city is bound by the mandate of § 25 to restore the withheld pay because the charges were terminated without a finding or verdict of guilt.

The more difficult issue concerns the period for which Brittle is to receive his back pay. Brittle's resignation from the police department on November 5, 1997, as matter of law ended the period of his suspension, and the fact that the police commissioner failed to issue a new suspension letter based on the return of the Federal indictments, coupled with a failure by the city to end the suspension at any earlier time, makes it arguable that Brittle could be owed back pay to November 5, 1997. It is equally arguable, however, that Brittle should be deemed estopped from recovering back pay beyond the date when the threats charge was dismissed, due to his delay in seeking reinstatement and back pay, on the theory that he should not benefit from delay in asserting his rights. (Madden, by contrast, promptly demanded his back pay upon the dismissal of the State charges. *Madden*, 412 Mass. at 1011.) Brittle's delay in asserting his claim until after he had been sentenced on the Federal charges[4] prejudiced the city by not alerting it to the fact that the State charges had been dropped at a time when the police commissioner could have sent a new suspension letter or reconfirmed the existing letter based on the pending Federal charges.[5]

Whether estoppel should apply need not be decided. Brittle did not include his claim letter in the record appendix, and his complaint in the Superior Court did not specify the date to which back pay was claimed. Brittle's brief in this court seeks back pay "from July 13, 1994, to November 5, 1997; or alternatively from July 13, 1994, to the date of the Federal indictment in June, 1996." Brittle does not argue concerning the appropriate terminal date for the back pay. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). As it is clear that

---

[4]At sentencing on the Federal conviction, Brittle, without divulging his potential claim for back pay, argued that he should not be fined on the ground that he had no resources.

[5]Indeed, nothing we say should be read to preclude the possibility that the suspension letter issued with the State indictments in mind, without any further act of renewal as reconfirmation, might suffice to cover any subsequent indictment from the date it was handed down.

Brittle is owed his back pay at least to the earlier of the two dates, and Brittle argues for no longer period, there is no need for us to consider his possible entitlement to back pay in the larger amount.

The judgment is reversed, and a new judgment is to be entered declaring that Brittle is to be paid his regular compensation from July 13, 1994, the date he was placed on suspension, to June 13, 1996, the day that the Federal indictments were returned.

*So ordered.*

KANTROWITZ, J. (dissenting). The plaintiff Wilbur Brittle was both a Boston police officer and an international drug dealer. Unsuccessful at both, he is currently serving a ten-year Federal prison sentence. At issue is his claim that he is entitled to back pay. Not surprisingly, he is not seeking reinstatement.

In July of 1994, Brittle was indicted in Suffolk Superior Court on charges of stalking and making threats to commit an assault and battery upon his one-time paramour and drug partner, Laverne Cotton. As a result of the charges, he was, on July 13, 1994, suspended without pay from the Boston police department, where he had been a sergeant. On May 19, 1995, the stalking charge was dismissed. On June 13, 1996, Brittle and thirteen others were indicted by a Federal grand jury on numerous drug offenses involving the possession with intent to distribute, and importation of and conspiracy to import, heroin into the United States at various times.

On November 19, 1996, the assistant district attorney filed a nolle prosequi on the outstanding threats case. The rationale for the Commonwealth's actions was that Brittle was being prosecuted in the Federal District Court on charges which were "directly related" to the State charges and that the complainant, Laverne Cotton, was a witness to the facts arising out of both proceedings.[1] Nearly one year later, Brittle pleaded guilty to the Federal charges.

[1]The nolle prosequi read as follows: "1. The defendant, Wilbur Brittle, is presently being prosecuted in the Federal District Court; 2. The complainant

Wilbur Brittle first met Laverne Cotton in the early 1970's. Their relationship developed into a romantic one, ultimately resulting in the birth of two daughters. He joined the Boston police department in 1979 and was promoted to the rank of sergeant in 1986.

In the mid-1980's, Cotton entered the world of drug trafficking. Based in Boston and New York, her cartel ventured as far as Africa, importing heroin into the United States. Police Officer Brittle shared in the profits of the illicit trade. In the early 1990's, Brittle expanded his role and became actively involved in the business, purchasing a van for the interstate transportation of heroin, recruiting couriers, and traveling to Asia to directly participate in drug transactions. In one deal, Brittle and other couriers he recruited traveled to Jakarta and Bangkok, making a profit of $100,000 that he shared with Cotton.

The empire was, however, soon to crumble. In May, 1994, Brittle and others traveled to Vietnam and Cambodia. Brittle drank heavily on the trip, causing problems with his cohorts. When he returned to the United States and delivered the heroin to Cotton, an argument ensued which, over the course of the evening at different locations, escalated to the point where Brittle found himself engaged in a physical altercation with Cotton. The Randolph police were called, and they forcibly removed Brittle from Cotton's home. Shortly thereafter, criminal charges were filed in Suffolk Superior Court.

His indictment, charging him with threats and stalking, triggered G. L. c. 268A, § 25, which allows for the suspension of an indicted police officer without pay. Under that statute, when criminal proceedings "are terminated without a finding or verdict of guilty," the officer is eligible for, among other things, reinstatement and back pay.

The statute protects both the public employer and a wrong-

[Laverne Cotton] will be called to testify for the government against the defendant Wilbur Brittle; 3. The indictments [in] Federal District Court against the defendant, Wilbur Brittle, are directly related to the indictment against Wilbur Brittle in Suffolk Superior Court; 4. The complainant, if asked to testify in Suffolk Superior Court[,] would also be required to testify about the same issues in [the] Federal District Court trial of the defendant Wilbur Brittle."

fully suspended employee. "The Commonwealth is . . . disserved by the continued functioning of any employee while under indictment for 'misconduct in his office or employment'. . . . The statute fully protects the suspended employee *upon his vindication,* whatever his status, assuring him 'all compensation . . . for the period of his suspension' and that such period shall count in determining all his fringe benefits." *Bessette* v. *Commissioner of Pub. Works,* 348 Mass. 605, 608 (1965) (emphasis added).[2] See *Springfield* v. *Director of the Div. of Employment Security,* 398 Mass. 786, 788-789 (1986), quoting from *Massachusetts Bay Transp. Authy.* v. *Massachusetts Bay Transp. Authy. Retirement Bd.,* 397 Mass. 734, 739 (1986) ("[T]he purpose of c. 268A, § 25, is 'to remedy the untenable situation which arises when a person who has been indicted for misconduct in office continues to perform his public duties while awaiting trial. . . . The statute addresses this problem by allowing for the temporary removal of such employees from office, and by precluding the payment of compensation and the awarding of retirement benefits during the period of their suspension' " [citations omitted]).

There is no issue as to the propriety of Brittle's suspension. His claim is that, as the suspension was for stalking (which charge was dismissed) and threats (which charge was nolle prossed), then under a literal reading of G. L. c. 268A, § 25, he is entitled to back pay, because both of those charges on which he was indicted "terminated without a finding or verdict of guilty." Buttressing his argument, he cites, and the majority relies upon, *Madden* v. *Secretary of Pub. Safety,* 412 Mass. 1010 (1992), noting, in particular, its construction of the statutory language, "charges on which he was indicted," as referring only to the charges found in the indictments that gave rise to the suspension. *Id.* at 1011. Brittle contends that because only the terminated State charges and not the subsequent Federal charges were the basis for the suspension, the holding in *Mad-*

---

[2]*Bessette, supra,* involved G. L. c. 30, § 59, which applies to officers and employees of the Commonwealth. General Laws c. 268A, § 25, applies to county, municipal, and district officers. The operative language in both statutes is identical. See *Massachusetts Bay Transp. Authy.* v. *Massachusetts Bay Transp. Authy. Retirement Bd.,* 397 Mass. 734, 739 n.8 (1986).

*den* entitles him to back pay. *Madden*, however, does not compel such a result.

In *Madden*, a Capitol police officer was suspended without pay when he was indicted for larceny, conspiracy, and receiving stolen goods. *Id.* at 1010. Those indictments were ultimately nolle prossed. Ten days later, he sought back pay. *Id.* at 1011. Approximately six weeks later, he was indicted in Federal court on drug charges, to which he ultimately pleaded guilty. *Ibid.* The Supreme Judicial Court determined that the officer was entitled to back pay because there was no finding of guilt on the "charges on which he was indicted."

As the trial judge noted, the facts here are distinguishable from those in *Madden*. First and foremost, there is a clear relationship between the State and Federal prosecutions in the current case which was lacking in *Madden*.[3] Secondly, in *Madden*, his suspension remained in effect notwithstanding the fact that there was, at one point, no criminal charges whatsoever pending against him. Here, there was a suspension during the period that Brittle was under continuous indictment arising out of related criminal proceedings.[4]

A literal reading of c. 268A, § 25, can result in clearly untenable and unintended consequences. Two scenarios illustrate the point. If one were suspended due to a stabbing, the resultant charge being assault and battery by means of a dangerous weapon, and the victim died six months later as a direct result of the stabbing, with a subsequent new charge of murder, a literal reading of c. 268A, § 25, would allow for back pay.

A more common scenario, and again illustrative of the point, concerns those charged with serious felonies, e.g., murder, manslaughter, rape, or robbery, who are arraigned in the local district court and then, shortly thereafter, are indicted and ar-

---

[3]Indeed, a reading of the briefs and record on the *Madden* case indicates that the reason for the nolle prosequi was "that recently acquired exculpatory evidence which has been disclosed to counsel for the defendant warrants this action." This is arguably the type of vindication enunciated in *Bessette, supra*, which protects the wrongfully suspended employee and allows him to receive back pay and other benefits.

[4]In this sense, the criminal proceedings against Brittle were never "terminated" for § 25 purposes, but merely incorporated in the then-pending Federal case.

raigned in the Superior Court with the original District Court
case being dismissed. In both of these scenarios, if the statute
were to be read literally, a public employee subject to G. L.
c. 268A, § 25, would be entitled to back pay.[5]

" 'A literal construction of statutory language will not be
adopted when such a construction will lead to an absurd and
unreasonable conclusion . . . .' Nor shall we interpret a statute
in such a way as to make a nullity of its provisions if a sensible
construction is available." *Commonwealth* v. *Wallace*, 431 Mass.
705, 708 (2000) (citations omitted). See *Dillon* v. *Massachusetts
Bay Transp. Authy.*, 49 Mass. App. Ct. 309, 315-316 (2000)
("We do not depart lightly from the express wording of a
statute, but in the unusual circumstances appearing here we
agree with the court below that a deviation is justified. . . .
[Statutory] interpretation should tend to preserve the substance
of a statute rather than diminish it, [and] should not override
common sense, or produce absurd or unreasonable results"
[citations omitted]).

Wilbur Brittle had a long-term relationship, personal and
professional, with Laverne Cotton. The charges in the Federal
court speak to the illegality of the latter. Cotton was to be a wit-
ness against Brittle in the Federal prosecution. The State charges
arose out of an alleged incident between the two, evidence
which would have been explored in the Federal prosecution.
While the charges in the two courts are technically different,
evidence surrounding both is not.[6]

The entry of the nolle prosequi on the State charges in these

---

[5]Back pay would be computed in such instances from the date of the suspen-
sion until the issuance of the new indictment. Pursuant to G. L. c. 268A, § 25,
a new suspension could be imposed based on the new indictment.

[6]In fact, had all the charges (Federal and State) against the defendant been
brought in State court, they could have been joined. "If a defendant is charged
with two or more related offenses, either party may move for joinder of such
charges. The trial judge shall join the charges for trial unless he determines
that joinder is not in the best interests of justice." Mass.R.Crim.P. 9(a)(3), 378
Mass. 859 (1979). "[O]ffenses are related if they 'arise out of a course of
criminal conduct or series of criminal episodes connected together or constitut-
ing parts of a single theme or plan.' " *Commonwealth* v. *Wilson*, 427 Mass.
336, 345 (1998) (citation omitted). Here, the threatening to assault charge
arose out of the defendant's participation in the drug trade. In the trial for the
drug offenses, evidence of the threats made by the defendant would have been
relevant and admissible to show the relationship between Laverne Cotton and

unique circumstances is not comparable to the entry of the nolle prosequi in the *Madden* case. Madden, in his case, was suspended on charges which were ultimately dropped as a result of exculpatory evidence. 412 Mass. at 1010-1011. Madden demanded his back pay within two weeks, which was denied. He was eventually indicted on different charges bearing no relation to the former ones. *Ibid.* Brittle, who did not demand back pay until over a year after the dismissal of his State charges, and after his Federal case was resolved, was indicted in both courts on factually related charges. Unlike Madden, he was continually under both indictment and suspension; there was one continuous course of criminal conduct with the result that the defendant was never free of on-going, related criminal proceedings.

As I believe that neither G. L. c. 268A, § 25, nor *Bessette* and *Madden*[7] intend the result reached today, I respectfully dissent.

---

the defendant and how their partnership ended. Similarly, evidence of the drug enterprise would have been admissible in the threatening to assault trial to show why the defendant threatened Cotton.

If all of the charges could have originally been brought in Federal court, the second indictment could be viewed as a superseding one.

[7]Interestingly, *Madden* never cited *Bessette*, nor discussed its vindication language; one reason being perhaps that Madden, unlike Brittle, was vindicated.