## ALLAN LEAVITT *vs*. CITY OF LYNN.

No. 99-P-1337.

Essex. January 10, 2002. - May 30, 2002.

Present: GREENBERG, KAFKER, & COHEN, JJ.

*School and School Committee,* Suspension from employment. *Public Employ-
ment,* Misconduct, Suspension. *Statute,* Construction. *Words,* "Misconduct
in office."

General Laws c. 268, § 25, which grants a superintendent of schools the
authority to suspend employees who fall under indictment for misconduct
in office or employment, did not apply to a situation in which the human
resource manager of a city's school system was indicted on two charges
arising out of his filing a false claim in order to defraud an automobile
insurer, where the human resource manager's duties did not include active
involvement with students, his office was located in a school administra-
tion building, and the crimes committed were unrelated to his official
duties. [13-16]

CIVIL ACTION commenced in the Superior Court Department on
July 10, 1997.

The case was heard by *Peter F. Brady,* J., on a statement of
agreed facts.

*John C. Mihos* for the defendant.

*William H. Sheehan, III,* for the plaintiff.

GREENBERG, J. Aggrieved by the action of the superintendent
of schools for the city of Lynn (city) suspending him without
pay, Allan Leavitt filed a complaint in the Superior Court to
recover lost wages. A Superior Court judge, upon a statement of
agreed facts, ruled in Leavitt's favor and awarded back pay
from July 13, 1994, the date of his suspension, to January 4,
1996, when he resigned from his position and began serving a
prison sentence for larceny of over $250 and removal or
concealment of a motor vehicle to defraud an insurer. The city
appeals. We hold that G. L. c. 268A, § 25, which grants the

superintendent the authority to suspend employees who fall under indictment, does not apply to this case.[1]

The following relevant facts are taken from a statement of agreed facts and other uncontested materials found in the record. On November 24, 1992, the Lynn school committee hired Leavitt as the human resource manager of the Lynn school system at a salary of $47,344. For the next eight months, he performed his assigned duties satisfactorily. Although his responsibilities are not fleshed out on this record, they evidently included directing a program for the selection and assignment of teachers and other school department employees, and screening and recommending job applicants to the superintendent.

On July 7, 1994, Leavitt was indicted on two charges, both of which arose out of his filing a false claim in order to defraud an automobile insurer. On July 15, 1994, he received notification by a letter signed by the superintendent that, pursuant to G. L. c. 268A, § 25, he had been suspended without pay. On December 14, 1995, he pleaded guilty to both counts against him. His criminal conduct did not take place on school grounds, and it did not involve school business.

The contested phrase "misconduct in such office or employment," found in G. L. c. 268A, § 25, has not escaped appellate scrutiny. We need not reiterate the details of those decisions, as collected and described in *Attorney Gen.* v. *McHatton*, 428 Mass. 790, 792-794 (1999). The basic tenet remains: an indictment for a crime arising from an employee's off-duty conduct is not generally considered misconduct "in office." See *Opinion of the Justices*, 308 Mass. 619, 627 (1941); *Tobin* v. *Sheriff of Suffolk County*, 377 Mass. 212, 213 & n.3 (1979). Contrast *Bunte*

---

[1] The first sentence of G. L. c. 268A, § 25, reads as follows:

"An officer or employee of a county, city, town or district, howsoever formed, including, but not limited to, regional school districts and regional planning districts, or of any department, board, commission or agency thereof may, during any period such officer or employee is under indictment for misconduct in such office or employment or for misconduct in any elective or appointive public office, trust or employment at any time held by him, be suspended by the appointing authority, whether or not such appointment was subject to approval in any manner."

v. *Mayor of Boston*, 361 Mass. 71, 74-76 (1972). However, in *Dupree* v. *School Comm. of Boston*, 15 Mass. App. Ct. 535, 537-538 (1983), we construed the statute to permit suspension without pay of a nontenured junior high school teacher who was indicted for possession of cocaine with intent to distribute, even though the offending behavior did not involve students or teachers and did not occur on school property. We reached that conclusion because of the special influence teachers exert on students of an impressionable age. *Id.* at 538-539. Teachers, we also observed, have a duty to carry out the mandates of G. L. c. 71, § 1, which authorizes school committees to offer courses on physiology and hygiene, including the adverse effects of narcotics. *Id.* at 539. For that reason, we viewed an indictment of a teacher for drug dealing to be sufficiently different from the situation in the *Tobin* case. *Ibid.* This reasoning carried the same force in *Perryman* v. *School Comm. of Boston*, 17 Mass. App. Ct. 346, 349-351 (1983), where a school committee was within its authority to suspend teachers indicted on welfare fraud charges.

There followed a series of analogous decisions noted in the *McHatton* case, 428 Mass. at 794, in which the court upheld the civil service discharge of police officers "who behaved inappropriately while off duty." The court in *McHatton* noted that appointment to a public position carries with it a "high standard of conduct," *ibid.*, and cited G. L. c. 41, § 96A, which prohibits the appointment as a police officer of a city, town, or district anyone who has been convicted of a felony. The city aligns the instant case with these cases and contends that Leavitt, as a person who participated in the selection and assignment of teachers, should be held to the same standard.

In construing the first paragraph of G. L. c. 268A, § 25, we apply the principle that "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975), quoting from *Industrial Fin. Corp.* v. *State Tax Comm.*, 367 Mass. 360, 364 (1975). Thus, we read the

phrase "misconduct in such office" with reference to the whole statute.

As noted, the reach of the statute has been extended to certain off-duty infractions in the case of teachers and police officers. Leavitt's responsibilities, however, did not include teaching or contact with the student population, and his position was unrelated to any law enforcement or security duties within the school district. To apply the first paragraph of G. L. c. 268A, § 25, to Leavitt's situation would, therefore, impermissibly read out of the statute the limitation "in such office or employment," referring to the type of misconduct. See *Casa Loma, Inc.* v. *Alcoholic Bev. Control Commn.*, 377 Mass. 231, 234 (1979) ("no provision of a legislative enactment should be treated as superfluous").

In reaching our conclusion, we have considered and rejected the city's argument that this case falls within the ambit of *Dupree, supra,* because of the impact that Leavitt's actions would have on the implementation of his duties in connection with the recruitment of teaching personnel.[2] However, we are handicapped — and so far as appears from the record appendix, so was the Superior Court judge — by not having been furnished with any information concerning the extent of Leavitt's hiring authority or the specific nature of his duties. In response to the panel's inquiry at oral argument, counsel for the city indicated that Leavitt made no final decision on the employment of teachers, and that he had unspecified advisory functions with respect to the hiring process. For all that appears, he may have done little more than collect and forward resumes to the school principals charged with hiring. As we have observed, his duties did not include active involvement with students, his office was located in a school administration building, and the crimes committed were unrelated to his official duties. In the absence of record support for the proposition that Leavitt's position was such that it would be anomalous to treat him differently from

---

[2]We place no weight on G. L. c. 71, § 59B, as amended by St. 1993, c. 71, § 53, which modified the duties of superintendents and principals to include the hiring of teachers.

teachers, we decline to extend the rationale of *Dupree* v. *School Comm. of Boston, supra,* to the circumstances of this case.

*Judgment affirmed.*