WILBUR BRITTLE *vs.* CITY OF BOSTON.

Suffolk. January 9, 2003. - June 20, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Police Officer. Public Employment,* Police, Suspension. *Police,* Suspension, Compensation. *Statute,* Construction.

A police officer who, while on suspension due to a pending State indictment charging that he had stalked and threatened his former girl friend, pleaded guilty to a six-count Federal indictment that had been brought while he was suspended, was not entitled under G. L. c. 268A, § 25, to the pay that had been withheld during the forty-month period of suspension preceding his plea of guilty to the Federal charges where, since the State charges against the police officer were nol prossed only after (and indeed because) he had been indicted on "directly related" Federal charges, the criminal proceedings against the officer had not terminated until he ultimately pleaded guilty. [584-589] COWIN, J., dissenting, with whom GREANEY and SPINA, JJ., joined.

CIVIL ACTION commenced in the Superior Court Department on April 8, 1998.

The case was heard by *Margaret R. Hinkle,* J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*William V. Hoch,* Special Assistant Corporation Counsel, for the defendant.

*Edward J. McCormick, III,* for the plaintiff.

MARSHALL, C.J. On November 5, 1997, Wilbur Brittle, a suspended Boston police officer, pleaded guilty to a six-count Federal indictment, the culmination of a law enforcement investigation into his international heroin smuggling activities. Brittle now seeks back pay for the forty-month period preceding his plea of guilty during which he was suspended without

pay.[1] No law requires that result. We affirm the judgment of the Superior Court denying Brittle all compensation lost during his suspension.

1. *Background.* We summarize the undisputed material facts, paying particular attention to those recited by the Federal prosecutor at Brittle's plea colloquy.[2] Beginning at least as early as 1992, Brittle, while serving as a Boston police officer, was an active participant in an international heroin smuggling ring, traveling to Asia to import heroin into the United States, recruiting other couriers and assisting in the planning of other smuggling trips. Laverne Cotton was the ring leader. In mid-1992, Brittle and Cotton had a falling-out: the two had "a physical confrontation," and Cotton obtained a protective order against Brittle.[3] See G. L. c. 209A. Brittle then took a "hiatus" from Cotton's drug smuggling operation.

In May, 1994, Brittle resumed his illegal activities as a courier for Cotton, traveling to Asia to acquire large amounts of heroin.[4] Shortly thereafter, Brittle and Cotton had another falling-out: Brittle "barreled his way" into Cotton's house, the two had "a physical confrontation," and Cotton obtained a second protective order against Brittle. The physical confrontation followed a "strong dispute" that commenced earlier in the day when Brittle delivered a suitcase of heroin to Cotton. Over the following days, Brittle made threatening telephone calls to Cotton, demanding payment for his most recent smuggling trip and threatening to inform the Drug Enforcement Agency of Cotton's

---

[1]Alternatively, Brittle seeks back pay for the twenty-three month period from the date he was suspended until the date he was indicted on Federal charges to which he ultimately pleaded guilty. But see note 9, *infra*.

[2]As the judge in the Superior Court noted, Brittle "was given the opportunity at the change of plea hearing in the Federal case to dispute the Government's synopsis of its evidence. . . . Aside from challenging several dates and objecting to evidence of criminal activity from 1986 to 1991, [Brittle] did not dispute the other allegations . . . ."

[3]Before 1992, Brittle and Cotton had had a long-standing personal relationship, and Brittle is the father of two of Cotton's children. As early as 1986, Brittle had been aware of Cotton's illegal drug smuggling activities and had shared in its proceeds, but it appears that it was not until 1992 that Brittle became an active participant in Cotton's operation.

[4]It appears that, by then, Brittle and Cotton were no longer in a personal relationship, and Cotton was pregnant with the child of another man. During that period, Brittle "began to drink heavily."

operation unless she paid him for the heroin delivery. In response, Cotton sought charges against Brittle and, on July 8, 1994, a grand jury indicted Brittle on two charges: stalking, G. L. c. 265, § 43, and threatening to commit an assault and battery, G. L. c. 275, § 2.[5] Brittle was immediately suspended from his duties as a police officer; the police commissioner of Boston notified Brittle of his suspension on July 13, 1994.

While the Commonwealth's indictments against Brittle were pending, Cotton and Brittle's illegal drug activities were under investigation by Federal law enforcement officials. A Federal grand jury were convened, and on June 13, 1996, Brittle and thirteen others were indicted by the grand jury on numerous drug-related charges involving conspiracy, importation of heroin, and possession of heroin with intent to distribute. At the time of the 1996 Federal indictment, Brittle remained suspended from his duties as a Boston police officer, and the Commonwealth's indictment against Brittle for threatening to commit an assault and battery on Cotton was still pending.[6]

On November 19, 1996, while the Federal case was proceeding toward trial, the Commonwealth sought and obtained an order of nolle prosequi of its pending indictments against Brittle. The assistant district attorney explained the reason for seeking the nolle prosequi: the State and Federal charges were "directly related," Cotton was to be called as a witness in the Federal trial against Brittle, and if the State charge proceeded to trial as scheduled, Cotton would be required to testify about "the same issues."[7] At the time, Brittle did not ask the city to remove his

---

[5]Nothing in the record suggests that the Commonwealth knew at that time that Cotton's allegations against Brittle concerned a payment dispute over their joint drug operation.

[6]Earlier, on May 19, 1995, the indictment against Brittle on the charge of stalking had been dismissed, perhaps in response to *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543, 546-547 (1994), holding that the stalking statute was unconstitutionally vague in certain respects. The Commonwealth continued to press its indictment against Brittle for threatening to commit an assault and battery.

[7]Specifically, the assistant district attorney informed the judge: "1. The defendant, Wilbur Brittle, is presently being prosecuted in the Federal District Court; 2. The complainant will be called to testify for the government against the defendant Wilbur Brittle; 3. The indictments [in the] Federal District Court

suspension, he did not claim that he was entitled to receive back pay or benefits, and he did not attempt to return to work.

On November 5, 1997, Brittle pleaded guilty in the United States District Court for the District of Massachusetts to all of the Federal charges. At Brittle's plea colloquy, the assistant United States attorney recited Brittle's activities in the Cotton drug-smuggling conspiracy, recited Cotton's activities, and explicitly referred to the earlier State charges triggered by the falling out between Brittle and Cotton over the payment for heroin. Immediately after his change of plea, Brittle submitted his resignation to the Boston police department.

In April, 1998, Brittle filed this action, seeking compensation pursuant to G. L. c. 268A, § 25.[8] A judge in the Superior Court allowed the city's motion for summary judgment, reasoning that, although G. L. c. 268A, § 25, did not explicitly address circumstances where, as here, multiple indictments had been brought against a suspended employee, it would be inconsistent with the statute's underlying intent to award Brittle compensation. A divided panel of the Appeals Court reversed, concluding that this case was controlled by our decision in *Madden* v. *Secretary of Pub. Safety*, 412 Mass. 1010 (1992). *Brittle* v. *Boston*, 54 Mass. App. Ct. 820 (2002). It awarded Brittle back pay from the date that he was suspended, July 13, 1994, to the date that he was indicted on the Federal charges,

pending against the defendant, Wilbur Brittle, are *directly related* to the indictment against Wilbur Brittle in Suffolk Superior Court; 4. The complainant, if asked to testify in Suffolk Superior Court would also be required to testify about the same issues in [the] Federal District Court trial of the defendant Wilbur Brittle" (emphasis added).

[8]General Laws c. 268A, § 25, provides, in pertinent part: "An officer or employee of a county, city, town or district . . . may, during any period such officer or employee is under indictment for misconduct in such office or employment . . . be suspended by the appointing authority . . . . If the criminal proceedings against the person suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension, and the time of his suspension shall count in determining sick leave, vacation, seniority and other rights, and shall be counted as creditable service for purposes of retirement."

June 13, 1996.[9] We granted the city's application for further appellate review.

2. *Discussion.* Brittle contends that he is entitled to back pay for the entire period of his suspension because the State indictments, which initially triggered his suspension, terminated "without a finding or verdict of guilty." G. L. c. 268A, § 25. Although Brittle did plead guilty to the Federal indictments, he asserts that those indictments are "not relevant" to whether he is entitled to lost compensation while he was suspended. The relief he seeks is neither compelled by the language of G. L. c. 268A, § 25, nor consistent with the statute's purpose.

General Laws c. 268A, § 25, provides in pertinent part: "If the criminal proceedings against the [suspended employee] are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension . . . ." By its express terms, the statute contemplates that payment for a period of suspension shall occur if, and only when, the employee is entitled to removal of his suspension. The suspended employee, of course, is entitled to removal of his suspension, only when the "criminal proceedings" against him terminate "without a finding or verdict of guilty on *any* of the charges on which he was indicted" (emphasis added). Brittle was under indictment throughout the entire forty-month period of his suspension before he resigned. He was never eligible to perform any public duties during that time; he was not entitled to "remov[al]" of his suspension, and he most assuredly was not entitled to reinstatement during that forty-month period.[10] "Criminal proceedings" against him did not terminate until he pleaded

_____

[9]The Appeals Court ruled that Brittle was entitled to compensation from July 13, 1994 until June 13, 1996, when he was indicted in Federal court (twenty-three months), and not until November 5, 1997, when he pleaded guilty (forty months), because Brittle had made no "argument concerning the appropriate terminal date for the back pay." *Brittle* v. *Boston,* 54 Mass. App. Ct. 820, 824 (2002).

[10]The statute does not provide that removal of suspension is "automatic," nor that the payment of back pay is "automatic," *post* at 590, if and when any one of a number of criminal indictments is terminated without a finding or verdict of guilt. Such a reading finds no support in the statute. In contrast, notice properly given "shall *automatically* suspend the authority of [the

guilty to the Federal indictments on November 5, 1997, and those proceedings terminated in a "finding or verdict of guilty." G. L. c. 268A, § 25.

Brittle in effect asks us to construe the phrase "criminal proceedings" narrowly to encompass only the State court proceedings. There is no reason to do so. A statute should not be "unduly constricted so as to exclude matters fairly within [its] scope." *Tilton* v. *Haverhill*, 311 Mass. 572, 577 (1942), quoting *Commonwealth* v. *Welosky*, 276 Mass. 398, 401 (1931), cert. denied, 284 U.S. 684 (1932). Rather, "[i]f the language of the statute is ' "fairly susceptible [of] a construction that would lead to a logical and sensible result" we will construe [it] so as "to make [it an] . . . effectual piece[] of legislation in harmony with common sense and sound reason.' " *Commonwealth* v. *Williams*, 427 Mass. 59, 62 (1998), quoting *Commonwealth* v. *A Juvenile*, 16 Mass. App. Ct. 251, 254 (1983). The Legislature surely recognized that there are numerous circumstances, such as here, where an initial indictment may give rise to or be related to other indictments, as the fullness of the criminal conduct of a defendant comes to light.[11] One indictment may spawn several, or a defendant may be convicted of charges arising from a course of criminal conduct on which multiple indictments are based, but not necessarily of each indictment arising

---

indicted employee]," and the suspension remains in effect until the employee "is notified . . . that the suspension is removed" (emphasis added). G. L. c. 268A, § 25. Brittle was never notified that his suspension had been removed.

[11]Contrary to the dissent, *post* at 592 n.3, the legislative history reveals that the Legislature has successively expanded the scope of G. L. c. 30, § 59, which is "identical in its operative language" to G. L. c. 268A, § 25. *Springfield* v. *Director of the Div. of Employment Sec.*, 398 Mass. 786, 788 (1986). Compare 1962 House Doc. No. 3387 (original bill providing that suspension would not result in loss of compensation or other benefits) with 1962 Senate Doc. No. 863 (amended bill, enacted as St. 1962, c. 798, providing that suspension *would* result in loss of compensation and accrual of other benefits). See 1963 House Doc. 3498, enacted as St. 1963, c. 829 (granting replacement employees authority to perform tasks of suspended employees); 1964 House Doc. No. 3565 (Governor submitting amendment to G. L. c. 30, § 59, as amended through St. 1964, c. 528, "to broad[en] the authority to suspend certain officers or employees for misconduct in office"). In enacting the various amendments, the Legislature has not once cut back the scope of either statute.

out of that conduct.[12] The Legislature reasonably withheld from the employee the right of removal of suspension (and corresponding back pay) only when "criminal proceedings" against him were "terminated" without a finding of wrongdoing on "any" of the charges against him. To cabin the term "criminal proceedings" to refer solely to proceedings concerning the initial indictment is thus inconsistent with the language of the statute, and with its purpose: "to remedy the untenable situation [that] arises when a person who has been indicted for misconduct in office continues to perform his public duties while awaiting trial." *Springfield* v. *Director of the Div. of Employment Sec.*, 398 Mass. 786, 788-789 (1986), quoting *Massachusetts Bay Transp. Auth.* v. *Massachusetts Bay Transp. Auth. Retirement Bd.*, 397 Mass. 734, 739 (1986). See *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 n.3 (1986), quoting *International Org. of Masters* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 392 Mass. 811, 813 (1984) ("Our primary duty is to interpret a law so as to effectuate the intent of the Legislature in enacting it").[13]

Our reading of the statute is also consistent with the converse purpose of the statute: to ensure that a suspended public employee is fully compensated if no misconduct by him is established. See *Bessette* v. *Commissioner of Pub. Works*, 348 Mass. 605, 608 (1965) ("The statute fully protects the suspended employee upon his vindication . . .").[14]

    *Madden* v. *Secretary of Pub. Safety*, 412 Mass. 1010 (1992),

---

[12]Such circumstances may occur when, for instance, a defendant is reindicted after a successful motion, see *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982), or when the victim of an assault with intent to murder dies and the defendant is reindicted on murder charges.

[13]Our holding neither "ignores the plain language and intent" of the statute, nor "rewrit[es] it," nor engages in "judicial legislation" to reach a "pleasing" result. *Post* at 590. Eleven judges have considered Brittle's claim for back pay, of whom six have concluded that he is not entitled to recovery under the terms of G. L. c. 268A, § 25, while five have concluded that he is entitled to compensation. That reasonable minds disagree on a matter of statutory interpretation does not warrant the charge that judges seek to subvert the Legislature's policy decision with their own. *Post* at 591.

[14]We do not interpret the "restrictive language of the statute" more "broadly" than the Legislature intended. *Post* at 594. The Legislature limited suspension without pay to public employees who are indicted for misconduct committed while in office, presumably for at least two reasons: (1) before an

on which Brittle relies, is readily distinguishable. Madden was indicted on State charges and suspended. All the State charges were nol prossed, and there were at the time no other indictments pending against him; all "criminal proceedings" had terminated. Seven weeks later he was again indicted, this time on unrelated Federal charges.[15] Within that seven-week period, Madden could have sought, and in fact did seek, reinstatement. He also sought "all compensation or salary due him." G. L. c. 30, § 59. In contrast, Brittle's State charges were nol prossed only after (and indeed because) he had been indicted on "directly related" Federal charges. Unlike Madden, Brittle's "criminal proceedings" did not terminate until he ultimately pleaded guilty. Had Brittle, like Madden, sought reinstatement when the State charge was nol prossed, his request to resume his duties as a police officer would undoubtedly have been summarily denied because of the pending Federal indictments. See *Bessette* v. *Commissioner of Pub. Works, supra* at 608 ("It is the ascertainable and indisputable fact of the indictment, quite apart from guilt, that makes continuance in office unsuitable"). Our decision today does not overrule *Madden* v. *Secretary of Pub. Safety, supra. Post* at 592. The result here is consistent with the holding in that case, which retains its full precedential value.

We need not decide whether we would reach the same result in a case where various indictments brought at different times or by different prosecuting authorities overlap in time but are unrelated. Here, there is an obvious and close relationship between the conduct that gave rise to Brittle's State indictments

---

indictment is properly issued, a grand jury must hear sufficient evidence to identify the defendant and probable cause to arrest him, see *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982), and (2) many misdemeanors and other crimes that do not involve "misconduct in office" do not raise the kind of "untenable" concerns that we noted in *Springfield* v. *Director of the Div. of Employment Sec.*, 398 Mass. 786, 788-789 (1986). We give full effect to the Legislature's obvious intent, reflecting as it does a careful balance of the rights of public employees against whom wrongdoing is not proved, and protection of the public from those employees who do engage in illegal conduct.

[15]The Secretary of Public Safety made no claim that Madden's Federal charges were related in any manner to the earlier State indictments. See *Madden* v. *Secretary of Pub. Safety*, 412 Mass. 1010, 1011 (1992). We have reviewed the briefs in that case and are confident that a claim of relatedness could not have been sustained.

and the conduct that resulted in his Federal indictments. Both involve the Brittle-Cotton drug smuggling conspiracy. Brittle and Cotton were engaged in a violent dispute concerning money Brittle claimed he was due on the delivery of a suitcase of heroin to Cotton. His violent conduct led initially to the State indictments. As Brittle's illegal conduct came to light in full measure, State and Federal law enforcement officials coordinated their strategy against Brittle. Cotton was the complaining witness in the State indictments against Brittle. She was also a critical witness in Brittle's Federal trial and, according to the assistant district attorney, would testify to "the same issues" in both the State and Federal proceedings, i.e., to the conduct that ultimately ended Brittle's involvement with Cotton and her drug-smuggling operation.

It is of no consequence that the remaining State indictment was not fully detailed at the Federal plea colloquy, or that the Federal indictment was not laid bare in minute detail when the State charge was nol prossed. For it is abundantly clear from the representations of both the district attorney for the Suffolk district and the United States attorney that those two respective offices were proceeding in tandem precisely because the conduct giving rise to the State and Federal indictments was related. Had Cotton been subjected to cross-examination by Brittle's attorney in the relatively insignificant State case, the Federal indictment against Brittle might well have been compromised. Neither office would have accepted that risk, as any punishment of Brittle resulting from a conviction of international heroin smuggling would be far greater than, and indeed would eclipse, any punishment that Brittle might receive in the State proceedings.[16] Nol prossing the State indictment to strengthen the closely related and more serious Federal indictment was not only reasonable, it would have been foolhardy for the district attorney to proceed otherwise. To grant Brittle the relief he seeks would provide a perverse incentive to prosecutors to pursue a less weighty State claim and possibly jeopardize a far

---

[16]Brittle was sentenced by the United States District Court judge to ten years in prison, with five years of supervised release to follow. Had he been convicted of the State charge of threatening to commit an assault and battery, the sentence could have been a fine of not more than $100 or a prison sentence of not more than six months. See G. L. c. 275, §§ 2, 4.

more serious Federal case, or vice versa, in order to avoid the distasteful obligation of back pay to a subsequently convicted public employee. The plain wording of the statute forecloses any such result. Brittle may not benefit from his criminal conduct at the expense of the city's taxpayers merely because the prosecutors of his drug-related crimes cooperated to bring him to justice.[17]

Because of our conclusion, we need not address the city's argument that Brittle should be equitably estopped from seeking back pay. See, e.g., *Yetman* v. *Cambridge*, 7 Mass. App. Ct. 700, 708-709 (1979) (city permitted to raise affirmative defense of laches, "an equitable defense consisting of unreasonable delay in instituting an action which results in some injury or prejudice to the defendant"). We note that the statute is silent as to the proper resolution of a claim by a suspended employee for back pay in circumstances where a city, acting in good faith, does not forthwith remove a suspension, and the employee does not seek reinstatement or back pay. The statute gives no indication that the employer has a duty to monitor the disposition of the "criminal proceedings," or that the prosecuting authority has any duty to advise the employer of an outcome favorable to the employee. The Legislature could reasonably have assumed that a suspended employee vindicated of every charge would promptly assert his right to removal of the suspension, or to receive compensation for the period of his suspension, or both. See *Madden* v. *Secretary of Pub. Safety*, 412 Mass. 1010, 1011 (1992) (suspended employee sought back pay ten days after entry of order of nolle prosequi).

*Judgment affirmed.*

Cowin, J. (dissenting, with whom Greaney and Spina, JJ.,

---

[17]The dissent posits that the Commonwealth could have "delay[ed] its proceeding until after the disposition of the Federal charges," *post* at 596, thereby recognizing that suspension of Brittle until the conclusion of the Federal prosecution was fully warranted. We see nothing in the statute that requires a prosecutor to manipulate proceedings so as to delay a trial, or to require the Commonwealth to expend unnecessary resources to bring to trial a defendant already convicted of far more serious crimes arising from his related conduct. In short, the solution proffered by the dissent elevates form over substance.

join). The court today ignores the plain language and intent of a statute to reach a result it finds pleasing as a matter of policy. I respectfully dissent.

The final paragraph of G. L. c. 268A, § 25, provides, in relevant part:

> "If the criminal proceedings against the person[] suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension . . . ."

This language unambiguously renders both reinstatement and back pay contingent on the fate of the charges that gave rise to the suspension, and automatic if those charges are terminated without a finding or verdict of guilt. The court has, however, rewritten the statute (and, presumably, the cognate G. L. c. 30, § 59) to provide that back pay shall be contingent, not on the fate of the charges giving rise to the suspension, but on the *removal of the employee's suspension* and his application for reinstatement to his former position. The statute has thus been revised by the court to defeat its automatic and limited application.

In addition, the court has greatly broadened the scope of the statute by infusing it with a "relatedness" consideration. According to the court, the employee is entitled to removal of his suspension (and, therefore, to his back pay) only if the criminal proceedings against him, including those "closely related" to the proceedings under the indictment that gave rise to the suspension, are terminated without a finding or verdict of guilty. "Relatedness" now pervades the statute despite the fact that it is a consideration foreign to the text. "We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design." *Commonwealth* v. *McLeod*, 437 Mass. 286, 294 (2002), and cases cited. This court's authority to interpret and apply statutes "is limited by its constitutional role as a judicial, rather than a legislative body. . . . We cannot interpret a statute so as to avoid injustice or hardship if its language is clear and unambiguous and requires a different construction." *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass.

534, 539 (1996), cert. denied, 520 U.S. 1131 (1997), quoting *Rosenbloom* v. *Kokofsky*, 373 Mass. 778, 780-781 (1977). We are under a duty "to avoid judicial legislation in the guise of new constructions to meet real or supposed new popular viewpoints, preserving always to the Legislature alone its proper prerogative of adjusting the statutes to changed conditions." *Pielech* v. *Massasoit Greyhound, Inc.*, *supra*, quoting *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 595 (1975). That the court believes that the Legislature should have included a "relatedness" concept does not authorize the court to do so itself, even to achieve a desired "good policy" result. The court does not direct attention to anything in the terms of the statute or its legislative history from which one could infer that such was intended.

In addition to legislating judicially to create a "relatedness" feature not present in the statute, the court never pauses to define what "related" means. The omission of this definition is glaring, for often charges against the same person are "related" in some sense. The court declares, *ante* at 588, that charges are "closely related" when the course of criminal conduct on which the indictments are based is "related," or when there is an "obvious and close relationship" between the conduct giving rise to the separate indictments, or when it is "abundantly clear" that the separate indictments are related. *Ante* at 587, 588. Thus, the court essentially states that "related" means "related," thereby providing little guidance to public employers and lower courts.

Regardless whether the State and Federal charges against Brittle were "related" in some way, they were not related for purposes of this statute. "Offenses are not related merely because they were committed by the same defendant, even on the same day." *Brittle* v. *Boston*, 54 Mass. App. Ct. 820, 823 (2002). It is only an indulgent reading of the record that permits the court to conclude that the State charges against Brittle were sought by Cotton "[i]n response" to the drug-related threats, *ante* at 582, that Brittle's illegal conduct "came to light in full measure," *ante* at 588, because of the investigation surrounding the State indictments, and that Federal and State authorities were "proceeding in tandem" or "cooperat[ing] to bring him to justice." *Ante* at 588, 589.

Nor does the court let precedent prevent it from reaching its desired conclusion. In *Madden* v. *Secretary of Pub. Safety*, 412 Mass. 1010, 1011 (1992), we said that under the *"unambiguous"* language of the statute "[t]he phrase 'charges on which he was indicted' *clearly* refers to the charges found *in the indictments that gave rise to the suspension"* (emphases added). The court has overruled *Madden.*[1] Moreover, the statute provides that when those charges are terminated without a finding or verdict of guilty, the employee's suspension "shall forthwith be removed" and the employee "shall receive" his back pay. *Id.* The court does not inform us why what was clear and unambiguous at the time of the *Madden* decision has become opaque and in need of refashioning.[2]

We recognized, correctly, in the *Madden* case that it is our duty to apply the *unambiguous* statute as written: "Although the [city's] arguments are persuasive as social policy, these arguments are properly addressed to the Legislature." *Id.* at 1011. In the decade since this court issued the *Madden* decision, the Legislature could have, but did not, express disagreement with our reading of the statute by amending it. The court should not ignore its silence.[3] See *Roberts* v. *Enterprise Rent-A-Car Co. of Boston*, 438 Mass. 187, 193 (2002).

[1]Contrary to the court's assertion, *ante* at 586 n.13, the court's opinion directly contradicts the statutory language. The indictment triggers the right to suspend the employee, and the continuation of the right to maintain the suspension is dependent on the "charges found in the indictments that gave rise to the suspension." *Madden* v. *Secretary of Pub. Safety*, 412 Mass. 1010, 1011 (1992). The court's decision is contrary to the statute, and can be squared with neither the result nor the reasoning of the *Madden* case. Although the court asserts that *Madden* "retains its full precedential value," *ante* at 587, it is clear that *Madden* survives this case only in the sense that Pompeii survived into the Middle Ages.

[2]The fact that weeks passed between the indictments in *Madden* v. *Secretary of Pub. Safety, supra,* rather than the indictments overlapping as in the present case, is a distinction without a difference. The operative fact in the *Madden* case was that the original charges concluded without a verdict or finding of guilty. Those were the charges under which Madden was suspended, and the case is directly on point. The fact that Madden sought reinstatement is also irrelevant. The statute does not impose on the employee the responsibility to seek reinstatement; it is designed to operate automatically.

[3]The court's characterization of the legislative history, *ante* at 585 n.11, is inaccurate. The Legislature has amended the cognate statute, G. L. c. 30, § 59, only twice, both in quick succession after the original 1962 enactment,

We interpret a statute "according to the intent of the Legislature, as evidenced by the language used, and considering the purposes and remedies intended to be advanced." *Glasser* v. *Director of the Div. of Employment Sec.*, 393 Mass. 574, 577 (1984). The court ignores the context in which this statute was passed and the situation for which it was intended. General Laws c. 30, § 59 (the so-called "Perry Law"), identical in its operative language to G. L. c. 268A, § 25, see *Massachusetts Bay Transp. Auth.* v. *Massachusetts Bay Transp. Auth. Retirement Bd.*, 397 Mass. 734, 739 n.8 (1986), was enacted to rid the Commonwealth of indicted public officials continuing to hold office *while under indictment*. "The purpose of the statute is to remedy the untenable situation which arises when a person who

St. 1962, c. 798. The 1963 amendment merely made clear that temporary employees have the same powers as the suspended employees they replaced. St. 1963, c. 829, § 2. This did not broaden the statute's scope (because the original statute allowed the appointing authority to fill the position with a temporary employee, an amendment authorizing the temporary employee to do the job was hardly necessary). The *only* other amendment, in 1964, reflected a minor broadening of the statute; it clarified that an employee may be suspended not just for misconduct in his employment, but also for misconduct in *any* public office, elected or appointed, and it clarified that the appointing authority may suspend regardless of whether the original appointment was subject to approval. St. 1964, c. 528. These changes merely reflect the normal tinkering that often follows soon after a statute's enactment.

In any event, the amendments, the most recent of which was enacted thirty-nine years ago, are of no assistance in resolving the present dispute. It is debatable whether they were, in fact, expansions at all. The court treats as an "expansion" the fact that the original statute differed from the bill that was introduced. *Ante* at 585 n.11. Leaving aside the obvious point that this was not the expansion of a statute (which did not yet exist), it was accompanied by a host of extensive safeguards. See note 5, *infra*. Given the sparse legislative history, caution is warranted in attempting to glean meaning from deleted or changed provisions "during a legislative journey to enactment." *Mercy Hosp.* v. *Rate Setting Comm'n*, 381 Mass. 34, 42 (1980). See *Irwin* v. *Ware*, 392 Mass. 745, 773 (1984). In addition, the court selectively quotes from the 1964 amendment. The amendment's stated purpose was "to enable forthwith the appointing authority to suspend certain officers or employees under indictment for misconduct at any time in public office or employment *pending the outcome of such indictment*" (emphasis added). St. 1964, c. 528, preamble.

The Legislature has not amended the statute for four decades, despite the existence of numerous instances of public corruption during that period. This is scarcely consistent with the court's view that the Legislature has "successively expanded" the statute's scope. *Ante* at 585 n.11.

has been indicted for misconduct in office continues to perform his public duties while awaiting trial." *Id.* at 739.

The restrictive language of the statute demonstrates that the Legislature purposely drafted a statute with a "narrow focus," *id.*, and did not intend to act as broadly as the court would (were it to sit as a law-making body). Initially, only an *indictment* (and not a complaint) potentially invokes the statute. Thus, by its terms the statute is inapplicable to an employee prosecuted in the District Court for serious offenses such as motor vehicle homicide, indecent assault and battery on a child under fourteen years of age, intimidating a witness or juror, driving while under the influence of alcohol, assault with intent to murder, distribution of cocaine within a school zone, or carjacking. See G. L. c. 218, § 26 (criminal jurisdiction of District Court). An employee-defendant may choose to waive indictment and be prosecuted in the Superior Court by complaint, see Mass. R. Crim. P. 3 (a), 378 Mass. 847 (1979); again, the statute would not apply. Or, an employee originally prosecuted by complaint (to be superseded by indictment) may enter into a plea bargain pursuant to which the offense is reduced to a lesser one in the District Court; the statute would not apply here, either.

Moreover, the statute requires "misconduct in . . . office." Except for cases involving teachers and police officers, this phrase has been interpreted generally to *exclude* an employee's off-duty conduct. See *Attorney Gen.* v. *McHatton*, 428 Mass. 790, 792-793 (1999); *Leavitt* v. *Lynn*, 55 Mass. App. Ct. 12, 13-15 (2002); *Perryman* v. *School Comm. of Boston*, 17 Mass. App. Ct. 346, 349-351 (1983); *Dupree* v. *School Comm. of Boston*, 15 Mass. App. Ct. 535, 537-539 (1983). Thus, the statute has been interpreted not to apply to a chief deputy sheriff indicted for bribery, *Tobin* v. *Sheriff of Suffolk County*, 377 Mass. 212, 213 & n.3 (1979), or to a school system human resource manager indicted for larceny over $250 and removal or concealment of a motor vehicle to defraud an insurer, *Leavitt* v. *Lynn*, *supra*. The statute is also inapplicable to *elected*, as opposed to appointed, officials. *McGonigle* v. *The Governor*, 418 Mass. 147, 149-150 (1994). In addition, the statute only states that the employee "*may*" be suspended, rather than "shall." It is therefore permissive, not mandatory.

These restrictions on the statute's application signify that the Legislature intended to protect governmental employees by limiting the statute to misconduct in office and only to such misconduct as results in an indictment. Even in such situations, the appointing authority has discretion whether to suspend and, in order to effect suspension, that authority must comply with specific, detailed statutory requirements.[4] In contrast, by the terms of the statute, nothing is required of the suspended employee, who is entitled to have his suspension removed and back pay restored automatically if the criminal proceedings are terminated without a finding or verdict of guilty.[5] The employee has no burden to assure compliance with the statute by the appointing authority. That burden falls squarely on the appointing authority.

The reason for an "unpalatable" result, *Brittle* v. *Boston*, 54 Mass. App. Ct. 820, 822 n.2 (2002), is the design of the statute, not its application by a court. It is helpful to recall what this court stated when interpreting G. L. c. 32, § 15 (3A), which

---

[4]The statute contains specific requirements for the notice of suspension:

"Notice of said suspension shall be given in writing and delivered in hand to said person or his attorney, or sent by registered mail to said person at his residence, his place of business, or the office or place of employment from which he is being suspended. Such notice so given and delivered or sent shall automatically suspend the authority of such person to perform the duties of his office or employment until he is notified in like manner that his suspension is removed. A copy of any such notice together with an affidavit of service shall be filed as follows: in the case of a county, with the clerk of the superior court of the county in which the officer or employee is employed; in the case of a city, with the city clerk; in the case of a town, with the town clerk; in the case of a regional school district, with the secretary of the regional school district; and in the case of all other districts, with the clerk of the district." G. L. c. 268A, § 25.

[5]General Laws c. 268A, § 25, inserted by St. 1972, c. 257, is nearly identical to G. L. c. 30, § 59, inserted by St. 1962, c. 798. The original bill, 1962 House Doc. No. 3387, provided for suspension of an indicted employee, but did not require loss of pay: "A suspension, under authority of this act, shall be without loss of compensation . . . ." To the extent anything can be gleaned from the sparse legislative history, it is that the original bill was even narrower than the present law, and that loss of compensation was inserted only in the context of the extensive safeguards detailed above.

mandates forfeiture of retirement benefits by public employees convicted of certain enumerated offenses: "Even if the Legislature did not foresee the possibility of a public employee who might have been convicted under one of the two enumerated Massachusetts statutes being convicted under an arguably equivalent Federal statute, it is not our function judicially to amend the statute to cover this eventuality." *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 688 (1986), citing *Thacher* v. *Secretary of the Commonwealth*, 250 Mass. 188, 190-191 (1924). Fortunately, the indictment of a public employee is a rare occurrence. It should not be a hardship for the appointing authority and the prosecution to communicate in order to be certain that the consequences of the dismissal or nolle prosequi of an indictment are understood. We should not, as the court suggests, *ante* at 588-589, interpret the statute so as to assist the interplay of Federal and State proceedings. Had the Commonwealth wished to delay its proceedings until after the disposition of the Federal charges, it could have sought to do so.

I may consider this result "unpalatable," *Brittle* v. *Boston*, *supra*. Nevertheless, it is this court's obligation to apply the statute as written. For these reasons, I would reverse the judgment of the Superior Court and enter judgment for Brittle in the amount of his regular compensation from July 13, 1994, to November 5, 1997. Should the Legislature decide that the statute is inadequate, it is its role to amend it. See *Leopoldstadt, Inc.* v. *Commissioner of the Div. of Health Care Fin. & Policy*, 436 Mass. 80, 92 (2002).