456 Mass. 506 (2010)
DANIEL PROVENCAL & another[1]
v.
COMMONWEALTH HEALTH INSURANCE CONNECTOR AUTHORITY & others.[2]
SJC-10528
Supreme Judicial Court of Massachusetts, Worcester.
February 8, 2010.
April 13, 2010.
Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & GANTS, JJ.
Patti A. Prunhuber for the plaintiffs.
Carl Valvo for the defendants.
Lorianne Sainsbury-Wong, for Health Care For All, amicus curiae, submitted a brief.
*507 Nancy J. Lorenz, Donna M. McCormick, Verna Sanchez, & Katherine Callaghan, for Chinese Progressive Association & others, amici curiae, submitted a brief.
SPINA, J.
On May 5, 2008, Daniel and Diane Provencal commenced this action in the Superior Court by filing a complaint for judicial review against the Commonwealth Health Insurance Connector Authority (authority), its executive director, and the chairperson of its board (collectively, the defendants) after the Provencals were deemed ineligible to participate in the Commonwealth Care Health Insurance Program (Commonwealth Care) because they had access to employer-subsidized health insurance (ESI). The defendants filed a motion to dismiss the complaint pursuant to Mass. R. Civ. P. 12 (b) (1) and (6), 365 Mass. 754 (1974), which was allowed. The Provencals appealed, and we granted their application for direct appellate review. For the reasons that follow, we now affirm.[3]
1. Statutory and regulatory framework. In 2006, the Legislature enacted a sweeping health care reform act entitled, "An act providing access to affordable, quality, accountable health care," St. 2006, c. 58 (the Act), the purpose of which, as set forth in the preamble, was "to expand access to health care for Massachusetts residents." Among its many provisions, the Act requires that all adult residents of the Commonwealth obtain and maintain health insurance "so long as it is deemed affordable." G. L. c. 111M, § 2 (a), inserted by St. 2006, c. 58, § 12. To that end, the Act created the Commonwealth Health Insurance Connector (connector), see G. L. c. 176Q, inserted by St. 2006, c. 58, § 101, the purpose of which is "to facilitate the availability, choice and adoption of private health insurance plans to eligible individuals and groups." G. L. c. 176Q, § 2 (a).
Responsibility for implementation of the connector is vested in the authority, an independent public entity "not subject to the supervision and control of any other executive office, department, commission, board, bureau, agency or political subdivision of the commonwealth except as specifically provided in any general or special law." Id. The connector is governed by a *508 ten-member board, id. at § 2 (b), that is authorized and empowered to, among other things, "develop a plan of operation for the connector" and "determine each applicant's eligibility for purchasing insurance offered by the connector, including eligibility for premium assistance payments." Id. at § 3 (a), (b). Further, the Legislature has authorized the connector to adopt regulations to implement its governing provisions. See id. at § 16.
In an effort to give low-income residents access to affordable health insurance, the Act created Commonwealth Care, see G. L. c. 118H, inserted by St. 2006, c. 58, § 45, a program designed to "reduc[e] uninsurance" in Massachusetts by "provid[ing] subsidies to assist eligible individuals in purchasing health insurance." G. L. c. 118H, § 2. Commonwealth Care is administered by the board of the connector. See id. See also G. L. c. 176Q, § 7. The Legislature has delineated, with specificity, the eligibility criteria for participation in Commonwealth Care. General Laws c. 118H, § 3 (a), provides:
"An uninsured individual shall be eligible to participate in the program if:
"(1) an individual's or family's household income does not exceed 300 per cent of the federal poverty level;
"(2) the individual has been a resident of the commonwealth for the previous 6 months;
"(3) the individual is not eligible for any MassHealth program, for Medicare, or for the child health insurance program established by [G. L. c. 118E, § 16C];
"(4) the individual's or family member's employer has not provided health insurance coverage in the last 6 months for which the individual is eligible and for which the employer covers at least 20 per cent of the annual premium cost of a family health insurance plan or at least 33 per cent of an individual health insurance plan;[[4]] and

*509 "(5) the individual has not accepted a financial incentive from his employer to decline his employer's subsidized health insurance plan."
Additionally, G. L. c. 118H, § 3 (b), states that the board of the connector may waive § 3 (a) (4) if the individual's employer complies with enumerated statutes that prohibit group insurance plans that charge higher premiums to lower-wage employees. See G. L. c. 175, § 110 (O); G. L. c. 176A, § 8½ G. L. c. 176B, § 3B; G. L. c. 176G, § 6A. In the event of a waiver, the employer's health insurance premium contribution for the applying individual shall be paid to the connector. See G. L. c. 118H, § 3 (b). Pursuant to G. L. c. 118H, § 4, all Massachusetts residents have the right to apply to participate in Commonwealth Care, to receive a written determination detailing denial of eligibility, and to appeal from any eligibility decision, "provided such appeal is conducted pursuant to the process established by the board of the commonwealth health insurance connector." Further, applicants for Commonwealth Care "shall be eligible for subsequent appeals subject to [G. L. c.] 30A." G. L. c. 118H, § 4.
2. Factual and procedural background. In 2007, Daniel Provencal was an employee of Brookfield Wire Company (Brookfield Wire) and earned $24,239. His wife was unable to work because of several medical conditions. Brookfield Wire offered health insurance to its employees and, during the time period at issue, paid at least thirty-three per cent of the cost of the annual premium. The Provencals could not afford to pay their share of the insurance premium, $196.52 every two weeks, which was nearly twenty per cent of their gross income. Therefore, they applied to participate in Commonwealth Care and thereby secure subsidized health insurance.[5] Their gross income was approximately 177 per cent of the Federal poverty level, well below Commonwealth Care's 2007 income eligibility cap of $41,076 for a household of two people.
*510 By notice dated November 30, 2007, the Office of Medicaid, which makes eligibility determinations on behalf of the connector, denied the Provencals' application, stating that they were not eligible for Commonwealth Care because they had access to ESI.[6] They satisfied all of the other eligibility criteria set forth in G. L. c. 118H, § 3 (a). The Provencals appealed from the decision to the MassHealth board of hearings and sought an opportunity to obtain a waiver of the ESI exclusion. A hearing was held on January 25, 2008, at which the Provencals, appearing pro se, presented facts explaining why they could not afford Brookfield Wire's insurance and, therefore, needed Commonwealth Care.
In a February 6, 2008, decision, a hearing officer found that the health insurance subsidy provided by Brookfield Wire appeared to disqualify the Provencals from participation in Commonwealth Care. Nonetheless, the hearing officer referred the Provencals' appeal to the connector for a further hearing to determine whether they might be eligible for Commonwealth Care based on their inability to afford ESI.[7] By letter dated March 5, 2008, the authority dismissed the Provencals' appeal because they had failed to set forth any grounds for an appeal. *511 The letter stated that the law governing eligibility for Commonwealth Care does not allow for a waiver of ESI due to its unaffordability in order to permit an applicant to become eligible for Commonwealth Care.[8] The letter further stated that the Provencals could submit a written request to the authority to vacate the dismissal of their appeal, and they also could seek judicial review of the decision in the Superior Court pursuant to G. L. c. 30A. On March 14, 2008, the Provencals requested that the dismissal of their appeal be vacated, and that they be given an opportunity to show that Brookfield Wire's ESI was not affordable to them, and, therefore, they were entitled to a waiver of the ESI exclusion pursuant to G. L. c. 118H, § 3 (b). By notice dated April 1, 2008, the Provencals' request was denied.
In their subsequent complaint for judicial review, the Provencals alleged that the defendants erred and abused their discretion in refusing to give fair consideration to the Provencals' request for a waiver of the ESI exclusion set forth in G. L. c. 118H, § 3 (a) (4). Further, they claimed that the "acts, practices and/or policies" of the defendants in failing to develop objective criteria for implementing the waiver provisions of G. L. c. 118H, § 3 (b), and 956 Code Mass. Regs. § 3.09(1)(c) (2008),[9] and in denying the Provencals' eligibility for Commonwealth Care without considering whether they qualified for an ESI waiver violated their statutory rights.[10] The Provencals sought *512 declaratory relief pursuant to G. L. c. 231A and reversal of the April 1, 2008, decision.[11]
The judge, in allowing the defendants' motion to dismiss,[12] concluded that the court lacked jurisdiction to review the authority's final decision where the Legislature had left the administration of Commonwealth Care to the connector's discretion, where the Provencals had failed to establish that they had a statutory right to a hearing, and where, as a consequence, the connector's refusal to consider the Provencals' waiver request was not an adjudicatory proceeding. The judge further concluded that neither G. L. c. 118H, § 3 (b), nor 956 Code Mass. Regs. § 3.09(1)(c) required that the connector develop standards for the treatment of waiver requests or consider such requests from individual applicants seeking eligibility for Commonwealth Care.
3. Discussion. The Provencals do not challenge their ineligibility for participation in Commonwealth Care because of the ESI exclusion. The focus of their appeal is on their ability to have that exclusion waived. As such, the essence of the Provencals' argument is twofold. They contend that the connector had a statutory duty, pursuant to G. L. c. 118H, § 3 (b), to implement a waiver program, and that the connector's refusal to consider their request for a waiver of the ESI exclusion was a part of their eligibility determination such that they had a right to receive a written decision detailing their ineligibility and to appeal from such decision. We disagree.
*513 It is a standard canon of statutory construction that "the primary source of insight into the intent of the Legislature is the language of the statute." International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). "[S]tatutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." Sullivan v. Brookline, 435 Mass. 353, 360 (2001). See O'Brien v. Massachusetts Bay Transp. Auth., 405 Mass. 439, 443-444 (1989). As we have stated, the aim of the Legislature in enacting the Act was "to expand access to health care for Massachusetts residents" (emphasis added). St. 2006, c. 58, preamble. To this end, G. L. c. 118H, § 3 (a), sets forth, in detail, five eligibility criteria for participation in Commonwealth Care. All five criteria must be satisfied before an uninsured individual "shall be eligible" to participate in Commonwealth Care. ESI is a clear disqualification from participation. See G. L. c. 118H, § 3 (a) (4). Once the board of the connector concludes that an applicant is ineligible for Commonwealth Care, that individual has "the right to receive written determination detailing denial of eligibility, and the right to appeal any eligibility decision." G. L. c. 118H, § 4. Here, the Provencals received written notification of their ineligibility for Commonwealth Care, and they appealed from that determination, as was their statutory right, albeit unsuccessfully.
While G. L. c. 118H, § 3 (a), encompasses the specifics of an uninsured individual's eligibility to participate in Commonwealth Care, § 3 (b) relates to a slightly different inquiry, namely whether the board of the connector should waive the ESI exclusion. The Legislature has stated that the board "may waive" this exclusion if the individual's employer complies with enumerated statutes that prohibit group insurance plans that charge higher premiums to lower-wage employees.[13] G. L. c. 118H, § 3 (b). The use of the word "may" denotes a discretionary power. See Brittle v. Boston, 439 Mass. 580, 594 (2003) ("may" is permissive, not mandatory); Turnpike Amusement *514 Park, Inc. v. Licensing Comm'n of Cambridge, 343 Mass. 435, 437 (1962) ("The word `may' in a statute commonly imports discretion"); Cline v. Cline, 329 Mass. 649, 652 (1953) (same). Thus, the Legislature has conferred on the board of the connector the discretion to determine whether and in what circumstances a waiver of the ESI exclusion would be appropriate.
As the entity charged with the administration of Commonwealth Care, the connector's view of its authority and responsibilities under G. L. c. 118H is entitled to substantial deference. See Dahill v. Police Dep't of Boston, 434 Mass. 233, 239 (2001), and cases cited. See also Iodice v. Architectural Access Bd., 424 Mass. 370, 373 (1997). We have stated that "[w]hen the Legislature delegates to an administrative agency a broad grant of authority to implement a program of reform or social welfare, the administrative agency generally has a wide range of discretion in establishing the parameters of its authority pursuant to the enabling legislation." Levy v. Board of Registration & Discipline in Med., 378 Mass. 519, 525 (1979). Consistent with this authority, an agency may promulgate regulations to give effect to legislative mandates. See Thomas v. Commissioner of the Div. of Med. Assistance, 425 Mass. 738, 746 (1997), and cases cited. An agency's ability to frame implementing regulations "implies discretion concerning how to carry out a [relatively] new legislative program with reasonable flexibility and in an orderly manner, giving suitable weight to the personnel and resources available to the agency." Brooks v. Architectural Barriers Bd., 14 Mass. App. Ct. 584, 588-589 (1982).
Here, apart from the language of § 3 (b) that the board "may waive" the ESI exclusion, no implementing regulations delineate the substantive criteria and procedural mechanisms for such a waiver.[14] In our view, this suggests that the connector has made a decision that, at this juncture, waiver of the ESI exclusion is *515 not feasible or appropriate, and such a determination falls within the connector's broad discretionary authority. This approach is consistent with the Legislature's general policy, expressed in § 3 (a) (4), of excluding from eligibility for Commonwealth Care those individuals who, in the first instance, have access to health insurance through their employers. The extent to which individuals who have access to ESI but are unable to afford it should be deemed eligible to participate in Commonwealth Care is for the connector to determine, based on the broad delegation of authority from the Legislature.[15] The evolving nature of Commonwealth Care is exemplified by the fact that the Legislature has mandated periodic reports on the status and activities of the connector, including "the operation and administration" of Commonwealth Care.[16] See G. L. c. 176Q, § 15. Currently, nothing in G. L. c. 118H requires individual *516 determinations on the waiver of ESI to allow eligibility for Commonwealth Care. If the Legislature had intended to create an economic hardship exemption to the ESI exclusion, thereby allowing individuals like the Provencals to participate in Commonwealth Care, then it could have included specific language in G. L. c. 118H, § 3, similar to that used in G. L. c. 118H, § 6 (b), which provides that the board of the connector "may waive copayments [for designated products and services in connector-procured health insurance plans] upon a finding of substantial financial or medical hardship."[17] It is not the province of this court to "read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose." General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 803 (1999), quoting King v. Viscoloid Co., 219 Mass. 420, 425 (1914).
Judgment affirmed.
NOTES
[1] Diane Provencal.
[2] The executive director and the chairperson of the board of the Commonwealth Health Insurance Connector Authority.
[3] We acknowledge two amicus briefs filed in support of the Provencals by Health Care for All and by the Chinese Progressive Association, the Chelsea Collaborative, the Northampton Living Wage Coalition, and Western Massachusetts Legal Services, Inc.
[4] To distribute more equitably the costs of health care provided to uninsured Massachusetts residents, the Act imposes a "fair share employer contribution" on employers of eleven or more "full-time equivalent employees" who make less than a thirty-three per cent contribution toward the health insurance premiums of their employees. See G. L. c. 149, § 188, inserted by St. 2006, c. 58, § 47; 114.5 Code Mass. Regs. § 16.03(d) (2009). Employers' fair share contributions are deposited in the Commonwealth Care Trust Fund. See G. L. c. 29, § 2OOO, inserted by St. 2006, c. 58, § 8. "Amounts credited to the trust fund shall be expended without further appropriation for programs designed to increase health coverage, including a program of subsidized health insurance provided to low-income residents of the commonwealth under [G. L. c.] 118H." Id.
[5] Pursuant to G. L. c. 111M, § 2, every Massachusetts resident who is eighteen years of age or older and who files or is required to file an individual income tax return must indicate whether such person "had creditable coverage in force for each of the 12 months of the taxable year for which the return is filed." G. L. c. 111M, § 2 (b). Further, "[i]f the person fails to indicate or indicates that he did not have such coverage in force, then a penalty shall be assessed on the return." Id. The board of the connector is authorized and empowered to "establish procedures for granting an annual certification upon request of a resident who has sought health insurance coverage through the connector, attesting that, for the purposes of enforcing [G. L. c. 111M, § 2,] no health benefit plan which meets the definition of creditable coverage was deemed affordable by the connector for said individual. The connector shall maintain a list of individuals for whom such certificates have been granted." G. L. c. 176Q, § 3 (a) (5). The record does not indicate whether the Provencals have been granted such a certificate.
[6] The November 30, 2007, notice also terminated the Provencals' Medicaid benefits because a minor child had left the household. That determination was upheld by the MassHealth board of hearings, and the Provencals have not appealed that decision.
[7] Commonwealth Health Insurance Connector Authority Administrative Bulletin 01-07 recognizes the propriety of transferring appeals from the MassHealth board of hearings to the connector for issues more properly decided by the connector.
[8] The parties agree that the connector has granted no waivers pursuant to G. L. c. 118H, § 3 (b).
[9] The language of 956 Code Mass. Regs. § 3.09(1) (2008) provides: "An uninsured individual who is a resident of the Commonwealth shall be eligible to participate in Commonwealth Care in accordance with [G. L.] c. 118H if:... (c) unless waived by the Board pursuant to [G. L.] c. 118H, § 3 (b), the individual's or family member's current employer has not provided health insurance coverage in the last six months for which the individual is eligible and for which the employer covers at least 20% of the annual premium cost of a family health insurance plan or at least 33% of an individual health insurance plan."
[10] In their complaint, the Provencals also alleged that the defendants' "acts, practices and/or policies" violated their rights under the Fourteenth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights. Because the Provencals have not pressed these issues on appeal, we do not consider them. See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 38 n.9 (2005); Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).
[11] Notwithstanding the fact that the Provencals' application for participation in Commonwealth Care was denied on November 30, 2007, their complaint for judicial review (filed on May 5, 2008) refers to the versions of the regulations that were promulgated by the connector in 2008. Those are the regulations relied on by the judge below and by the parties in the present appeal. We rely on those same versions.
[12] In 2008, the standard for reviewing the adequacy of a complaint challenged by a motion to dismiss pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), was modified in Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636 (2008). As therein stated, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true." Id. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Because Iannacchino v. Ford Motor Co., supra, was decided on June 13, 2008, and the defendants filed their motion to dismiss on August 18, 2008, this modified standard is controlling.
[13] The Provencals alleged in their complaint that, to the best of their knowledge, Brookfield Wire has complied with G. L. c. 175, § 110 (O); G. L. c. 176A, § 8½ G. L. c. 176B, § 3B; and G. L. c. 176G, § 6A. The defendants have not challenged this assertion.
[14] Pursuant to 956 Code Mass. Regs. § 3.14(2) (2008), an applicant for Commonwealth Care is entitled to a fair hearing to appeal from "any adverse eligibility decision based on an Applicant's access to government-sponsored or employer-sponsored insurance." As such, an applicant is entitled to challenge a denial of eligibility based on G. L. c. 118H, § 3 (a) (3) and (4). Contrary to the Provencals' assertion, the language of 956 Code Mass. Regs. § 3.14(2) does not confer any rights on an applicant with respect to whether ESI may or may not be waived.
[15] Pursuant to the State Administrative Procedure Act, an agency is required to conduct an adjudicatory proceeding when "the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing." G. L. c. 30A, § 1 (1). Here, there are neither statutory nor constitutional requirements that would entitle the Provencals to a hearing on the waiver of the ESI exclusion. See School Comm. of Hatfield v. Board of Educ., 372 Mass. 513, 514-516 (1977). Their right to a hearing would arise only after implementation of waiver provisions with articulated standards and criteria governing the connector's actions. See id. at 516. The necessity of implementing a waiver program is not a judicial or quasi judicial question but is a legislative one. See generally Hayeck v. Metropolitan Dist. Comm'n, 335 Mass. 372, 375 (1957).
[16] Pursuant to St. 2007, c. 205, § 43, the Legislature directed the connector to "publish a report on implementation of [G. L. c. 118H, § 3 (b),] including the number of eligible individuals enrolled in [Commonwealth Care] and the projected premium contribution amounts to be paid by employers." On June 18, 2008, the executive director of the authority delivered this report to the Legislature, detailing "the estimated number of eligible individuals that could be affected, if the Board of the Connector opts to waive the statutory exclusion from eligibility for Commonwealth Care for adults who have access to ESI, the estimated cost to the program of doing so, and the projected premium contributions to be paid by employers." The Provencals point out that the judge below allowed their motion to strike the report from the record. Thus, while we can take judicial notice of the fact that the report was submitted to the Legislature, we do not consider its specific contents. See Nantucket v. Beinecke, 379 Mass. 345, 352 (1979) (matters are judicially noticed only when indisputably true); Commonwealth v. Grinkley, 44 Mass. App. Ct. 62, 69-70 n.9 (1997) (appellate courts may take judicial notice of facts of common knowledge).
[17] Pursuant to 956 Code Mass. Regs. § 3.14(5) (2008), applicants and enrollees in Commonwealth Care are entitled to a fair hearing to appeal "the Connector's denial of a financial hardship waiver or renewal of a financial hardship waiver under 956 [Code Mass. Regs. §] 3.11(5)." Unlike the lack of substantive criteria and procedural mechanisms governing an ESI waiver, 956 Code Mass. Regs. § 3.11(5) (2008) sets forth the criteria for extreme financial hardship and the mechanisms for waivers of copayments.